## AUSTIN v. THE STATE.

[No. 2,827. Filed April 18, 1899.]

INTOXICATING LIQUORS.—*Giving Away Liquor on Legal Holiday.—Statutory Construction.*—Section 2194 Burns 1894, making it unlawful to sell, barter, or give away, to be drunk as a beverage, any spirituos, vinous, malt or other intoxicating liquor, upon any legal holiday, etc., is intended to apply to dealers in liquor, and does not apply to a person, not a dealer, who gave away champagne, as an act of hospitality, at his private office on New Year's day to persons there assembled.

From the Jasper Circuit Court. *Reversed.*

*B. F. Furguson, J. E. Wilson, R. S. Dwiggins* and *Foltz, Spiller & Kurrie,* for appellant.

*W. L. Taylor,* Attorney-General, *W. A. Ketcham, Merrill Moores* and *A. E. Dickey,* for State.

ROBINSON, J.—Appellant was indicted and convicted for giving away on the 1st day of January, 1898, intoxicating liquor to be drunk as a beverage.

The indictment was brought under section 2194 Burns 1894, section 2098 Horner 1897, which is as follows: "Whoever shall sell, barter, or give away to be drunk as a beverage, any spirituous, vinous, malt, or other intoxicating liquor, upon Sunday, the Fourth day of July, the first day of January, the twenty-fifth day of December (commonly called Christmas day), Thanksgiving day as designated by proclamation of the Governor of this State or the President of the United States, or any legal holiday; or upon the day of any election in the township, town, or city where the same may be holden; or between the hours of eleven o'clock p. m. and five o'clock a. m.,—shall be fined in any sum not more than fifty dollars nor less than ten dollars, to which may be added imprisonment in the county jail not more than sixty days nor less than ten days."

It appears from the record that on New Year's day, appel-

Austin v. State.

lant, who was not a dealer in liquor, expecting to make no profit dispensed champagne at his private office, as an intended act of hospitality, to certain persons there assembled. The indictment charges a gift to one Charles Warner, whom the proof shows to have been thirty-five years old. The sole question presented is whether appellant was properly found guilty, under the above statute, of giving away intoxicating liquor to be drunk as a beverage.

It is argued by the State that the express declarations of the legislature are not to be varied, and that when the statute used the word "whoever" it in so many words made it a criminal offense for *anyone* to "give away" liquor on New Year's day. It is not to be denied that the evidence brings the act of appellant within the letter of the statute, and if this is controlling, the judgment of conviction was right.

It is well settled that, although an offense may come within the letter of a criminal statute, it does not for that reason necessarily follow that the act is punishable. But it must also appear that the act complained of comes within the spirit and intent of the legislative enactment. It is true, every act punishable under a criminal code must come within the letter of the statute, because the designation of the person to be punished is a necessary part of the definition of every crime. *Paragon Paper Co.* v. *State,* 19 Ind. App. 314.

It is argued by the State that the express declarations of the legislature are not to be varied, and we are referred to the following oft-quoted and long approved language of Chief Justice Marshall, in *United States* v. *Wiltberger,* 5 Wheat. 76: "The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must

Austin v. State.

authorize us to say so." In that case the defendant was indicted for manslaughter charged to have been committed upon the high seas. The section under which the prosecution was had provided that, if any seaman or other person should commit manslaughter on the high seas, he should be punished by fine and imprisonment. It appeared in the special verdict that the offense was committed on board an American vessel in a river about half a mile wide and in the interior of a country. The jurisdiction of the court was urged on the ground that the words "high seas" would be extended to the river, and on the further ground that in construing the whole act, the words of another section, descriptive of the place in which murder might be committed, should be engrafted on the section which described the place in which manslaughter might be committed, as this was the obvious intent of the legislature. But this the court refused to do, and in the opinion the learned Chief Justice used the language above quoted. In that case the court was asked to enlarge the very letter of the statute, and not to restrict the words the statute used; in other words, to collect the spirit of the statute, not from its words, but from words obviously intended to be used in the enactment. It will be readily seen that this is not the question in the case at bar.

The rule is thus stated in Bishop on Statutory Crimes, section 220: "If a case is fully within the mischief to be remedied, and is even of the same class and within the same reason as other cases enumerated, still, if not within the words, construction will not be permitted to bring it within the statute."

The rule as above declared by Chief Justice Marshall, is now, and has long been the law in this State. But the important distinction must be kept in view between excepting out of a criminal statute something apparently included, and incorporating into a statute something not enumerated. A court may restrain the general words of a penal statute, and

limit their application to such cases as the legislature obvious-
ly intended, but it will not enlarge the particular words of
such a statute so as to embrace matters not expressly included
in the language used.    This distinction has been recognized
in criminal and civil cases in this State.    Thus, where a
statute, section 93 R. S. 1843, p. 979, provided that, "Every
person, not being licensed according to the laws in force at
the time to vend spirituous liquors by retail who * * * *
shall barter or sell any spirituous liquor by a less quantity
than a quart at a time shall be fined etc.," it was held that a
sale by a druggist for medical purposes was not a violation
of the statute, although the sale came within the letter of the
act.    *Donnell* v. *State*, 2 Ind. 658.    The liquor act of
March 5, 1859, made no exception permitting a sale for
medical purposes, but it was held the court would make the
exception when proper.    *Thomasson* v. *State*, 15 Ind. 449;
*Jakes* v. *State*, 42 Ind. 473.    When the act of March 17,
1875 became operative, it contained no exceptions authoriz-
ing the sales of liquor for medical purposes, but the court
excepted from the prohibition of the statute *bona fide* sales
for medical purposes.    *Hooper* v. *State*, 56 Ind. 153.    And
under the provisions of the act of March 11, 1895, making
it unlawful for the proprietor to permit any person other than
himself and family to go into his place of business where in-
toxicating liquors are so sold upon such days and hours when
the sale of such liquors is prohibited by law, the Supreme
Court has said, although the point was not expressly de-
cided, that an emergency might arise of great necessity to
admit some one other than those mentioned in the statute,
and while such admission might infringe upon the letter of
the statute, it would not come within its spirit, and that un-
der the particular circumstances the court might make the
necessary exception.    *State* v. *Gerhardt*, 145 Ind. 439, 467,
33 L. R. A. 313.

And so a statute exempting from taxation "every building
erected for religious worship, and the pews and furniture

within the same, and the lands whereon such building is situate, not exceeding ten acres" could not be extended by construction to include a building for the residence of the minister of a church, the residence being situated upon a town lot adjacent to the lot upon which the church stood. *Trustees, etc.,* v. *Ellis,* 38 Ind. 3.

The same distinction has been recognized in other jurisdictions. Thus, where a clergyman was brought into this country under contract to act as rector of a church, a prosecution was begun under a federal statute, which prohibited the importation of any foreigners under contract to perform labor or service of any kind. The statute contained no exception, and the act complained of was within the letter of the statute, but in passing upon the question the Supreme Court of the United States, in holding the statute had no application, said: "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has often been asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislature, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislature intended to include the particular act. * * * The construction invoked, cannot be accepted as correct. It is a case where there was presented a definite evil, in view of which the legislature used general terms with the purpose of reaching all phases of that evil, and thereafter, unexpectedly, it is developed that the general language thus employed is broad enough to reach cases and acts which the whole history and life of the country affirm

should not be intentionally legislated against.    It is the duty of the courts, under these circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute." *Holy Trinity Church* v. *United States*, 143 U. S. 457, 12 Sup. Ct. 511.

In the case of the *United States* v. *Kirby*, 7 Wall. 482, the act of an officer in arresting a mail-carrier while he was carrying the mail, on a warrant issued on an indictment for murder, the arrest having been made in good faith and with no intent to interfere with the mails, was held to be not within the provisions of an act prescribing a punishment for any person who should knowingly and wilfully obstruct or. retard the passage of mail or any driver or carrier, although the act complained of was within the letter of the statute. See *Jackson* v. *Collins*, 3 Cowen 89; *People* v. *Utica Ins. Co.*, 15 Johns. 357; *Spring Car Co.* v. *Baltimore, etc., R. Co.*, 11 Md. 81; *Welch* v. *Stowell*, 2 Doug. (Mich.) 331; *Stone* v. *Elliott*, 11 Ohio St. 252.    The rule that, "where there is no ambiguity in the words there is no room for construction," is approved by numerous courts and text writers of high authority, among whom is Mr. Black in his work on interpretation of laws, to which we are referred by counsel for the State.    But this author in his work on Intoxicating Liquors, section 430, in commenting upon the holding of the supreme court of Maryland, (*Cearfoss* v.· *State*, 42 Md. 403), recognizes the distinction we have pointed out above.    See, also, Black's Inter. of Laws, p. 41.

In construing a statute the prime object is to ascertain and carry out the purpose of the enactment, and it is the duty of a court in such matter first to look to the words used and give to them their ordinary meaning.    But if the enforcement of the strict letter of a statute would lead to manifest injustice or absurdity, the court may look not only to the words used in the act itself, but also to other statutes on the same subject, the objects contemplated, the evils to be cor-

rected, the remedy provided, such contemporaneous history as probably induced the passage of the law, the history of the legislation upon the subject-matter of the act; and from these gather the intention of the legislature in creating the law, and, so far as possible carry out such intention thus obtained. Every statute, whether civil or criminal, ought to be so construed, if its language and subject-matter will admit of it, as not to infringe upon existing individual rights.    Suth. Stat. Con., section 322; Black Inter. of Laws, pp. 174, 175; *State, ex rel.,* v. *Harrison,* 116 Ind. 300; *Mayor, etc.,* v. *Weems,* 5 Ind. 547; *Middleton* v. *Greeson,* 106 Ind. 18; *State, ex rel.,* v. *Forkner,* 70 Ind. 241; *Stout* v. *Board, etc.,* 107 Ind. 343; *Prather* v. *Jeffersonville, etc., R. Co.,* 52 Ind. 16.

The statute under consideration is substantially a reënactment of the first section of the act of March 5, 1877, Acts 1877, p. 92, which was, "An act to prohibit the sale" of liquors on certain named days.    When this section was reënacted in 1881 it became one section of the general revising act entitled, "An act concerning public offenses." Acts 1881, p. 174, section 190.    The offense charged in the indictment became such by virtue of the act of 1877, and in arriving at the intent of the section in question we are authorized to look to that act.

The legislature of this State has never undertaken to legislate directly upon the use of intoxicating liquors by the individual citizen,. except its excessive use.    It has never been the policy of the legislature to regulate the proper use of liquor by adults, but to regulate the traffic in liquor, by restricting its sale or barter.    Prior to 1873 it was not made an offense for any one to give away intoxicating liquors to be drunk as a beverage, except to minors, and persons at the time, or in the habit of becoming, intoxicated.    Prior to that date the enactments required authority from some designated source to sell or barter such liquors, but nothing was said about giving away liquors, except as above indicated.    The

act of 1873 seems to have been the first declaration by the legislature that it should be an offense for a liquor dealer to give away intoxicating liquors to be drunk as a beverage. And where punishment has been inflicted for giving away intoxicating liquor, it has been as a necessary incident to a statute regulating the sale to secure its efficient operation. A review of the many different acts on the subject will disclose the fact that they have been directed to the traffic in liquors, and have endeavored to restrict sales, and also to restrict such gifts as are evidently an evasion of the law governing sales. *Daniels* v. *State,* 150 Ind. 348. Some of the enactments of the legislature upon the question will be found in the Acts of 1839, p. 21; Acts of 1841, p. 42; Acts of 1849, pp. 82, 84; Acts 1850, p. 119; Acts 1851, pp. 121, 131; Acts 1853, p. 87; Acts 1859, p. 202; Acts 1861, p. 143; Acts 1865, p. 197. See *Hedderich* v. *State,* 101 Ind. 564.

The view that the prohibition against the giving away of liquor was intended as an incident to the provisions regulating sales is further borne out by the wording of the acts. Thus the law of 1873 (Acts 1873, p. 151) made it unlawful for any person "to sell, barter or give away for *any purpose of gain,* to any person whomsoever, any intoxicating liquors" etc., without first obtaining a permit as provided. The act of March 17, 1875 (Acts 1875 Sp. Sess., p. 55, section 7283 Burns 1894) made it unlawful "for any person directly or indirectly, to sell, barter or give away, for *any purpose of gain,* any spirituous," etc., "liquors," etc., without procuring a license; and the same section further provided that no person should, "without having first procured such license, *sell or barter* any intoxicating liquor," etc. And the twelfth section of the same act, section 7285 Burns 1894, provided a penalty for any person, not licensed, to "sell or barter" any such liquors. The act of March 8, 1897 (Acts 1897, p. 253) amending the first section of the act of 1875 (section

Austin *v*. State.

7283, *supra*) retains the words "sell, barter or give away for any purpose of gain."

*State* v. *Adamson*, 14 Ind. 296, cited by counsel for the State, applies to the case of giving away liquors to evade the law of sales. This case is also cited to the point that the general language of the title of an act concerning sales may also include gifts, and that although the title of an act may refer to sales only, that fact does not show an intention of the legislature to limit the matter to sales only. It is true that the enumeration of subjects in the title of an act is not conclusive of the matters embraced in the body of the act, yet the title may be looked to, along with other matters, in arriving at the legislative intention. Black Interp. of Laws, p. 174. The title of the act in question in the above case was "An act to regulate and license the sale of spirituous," etc., "liquors," etc., and it was held that a section prohibiting gifts to minors and a person in the habit of getting intoxicated was included in the title, because it should be regarded as a necessary incident to a statute regulating the sale, and a necessary precautionary provision to prevent evasion of the prohibition to sell. A statute in force at that time expressly prohibited *sales* to such persons, and in order to prevent an evasion of this provision, a gift was held an incident to the statute regulating sales. The legislature had made it unlawful to sell or give liquor to a minor at any time, and a gift to a minor at any time was properly held punishable, as an evasion of the law regulating sales. See *State* v. *Young*, 47 Ind. 150; Acts 1859, p. 202; *Williams* v. *State*, 48 Ind. 306.

In *Vinson* v. *Town of Monticello*, 118 Ind. 103, also cited by counsel for the State, it is held that under a statute authorizing towns to license, regulate, and restrain the *sale* of liquors, a town ordinance prohibiting the *sale, barter, or giving away* of intoxicating liquor without a license was valid, as the power to prohibit the bartering or giving away

of liquors was included in the grant contained in the statute giving the power to license, regulate, and restrain, upon the principle that a grant carries with it by implication all that is necessary to make the power granted effectual.

In the case of the *State* v. *Hirsch*, 125 Ind. 207, cited by counsel for the State, the court, speaking of the section of the statute now under consideration, said: "The object and purpose of the statute were to prevent elections from being influenced by the use of intoxicating liquors, and to put it beyond the power of any person to secure an election to office by the use or influence of intoxicating liquors." But the question involved in that case, as stated in the opinion, was whether it is a crime for a person *having* a *license* under the law, to sell liquor on the day of a primary election.

The decisions of the courts of other states upon a gift of liquor as an act of hospitality are not uniform. In Maryland (*Cearfoss* v. *State, supra*), as we have seen, it has been held a punishable offense. The contrary was held in Illinois and Pennsylvania. *Albrecht* v. *People*, 78 Ill. 510; *Commonwealth* v. *Carey*, 151 Pa. St. 368, 25 Atl. 140. But see *Altenberg* v. *Commonwealth*, 126 Pa. St. 602, 17 Atl. 799, 4 L. R. A. 543. In Kentucky a statute made it unlawful to sell, barter, or give away liquors, and excepted from its provisions persons who give liquors to their invited guests in their own household. Upon a charge of giving away liquor in the defendant's own home, the court said: "The statute was not intended to embrace such a case. In fact, the exceptions in the statute embrace this case." *Powers* v. *Commonwealth*, 90 Ky. 167, 13 S. W. 450. See, also, *State* v. *Jones*, 39 Vt. 370. In Alabama the giving of liquor in a private residence was held not within a statute prohibiting any one to "sell, or otherwise dispose of," liquors, the court holding that the ordinary meaning of "disposing of" property did not include a mere hospitable gift. *Reynolds* v. *State*, 73 Ala. 3.

Austin *v.* State.

Appellant was not a dealer in liquors. He was in no way connected with the liquor traffic. He furnished liquor to an adult friend as his guest in his own private apartments, without price, and as an act of hospitality, and without any intention to evade the provisions of any law. How far a legislature might go in restricting the purely personal rights and privileges of an individual in such matters is not before us in this case. But we cannot escape the conclusion that an affirmance of this judgment would logically lead to an infringement of personal privileges never contemplated by the legislature in its enactment of our present liquor laws. It will readily be seen, without enumerating instances, that such a precedent could be invoked as controlling in cases that would make such a construction of the law not only unjust but absurd. How far such matters should be regulated or restricted, the people should themselves declare in plain and unequivocal language through their representatives in the legislature. We know, as a part of the history of the State, the people have long been divided as to the policy the State should adopt with reference to the liquor question. That the legislature has power to restrict its sale, and regulate its use, has long been settled. Whether a legislative prohibition of its use in a case like that at bar would be an invasion of private rights, we have nothing to do. We simply mean to hold that, in our opinion, the legislature has not yet gone that far. A court should hesitate to carry the provisions of any statute into the private life of the individual, and declare for him a rule of conduct therein, unless the legislature has plainly directed it should be done. True it is, the home or private apartments of the individual will not shield him in the violation of a penal code. But we believe that when the legislature concludes to add to the restraint of the sale of liquors the restraint of their use by the individual in his home, it will expressly say so in language which cannot be doubted. We cannot conclude that the law as it now stands

makes it a misdemeanor to do the acts charged against appellant.

The motion for a new trial should have been sustained. Judgment reversed.