State of Iowa, Appellee, v. W. D. Johns, Appellant.

Intoxicating liquors: NUISANCE: EVIDENCE. On a prosecution for maintaining a liquor nuisance and proof that large quantities of liquors had been consigned to defendant with his knowledge, a presumption that he was the owner arises; and upon a further showing that they were taken to a particular location, and that some of them were disposed of at that place when defendant was present, and that a consumer while not making a direct payment therefor did pay an assessment of some kind for some purpose, a finding that defendant was owning and keeping liquors at that place for an unlawful purpose was warranted.

Same: OFFENCES: STATUTES. The same criminal act may be a violation of more than one statute, and the fact that the act is covered by one statute is no reason why it may not be covered by another; so that a person who keeps a place and intoxicating liquors therein in violation of the provision of Code section 2404, is also guilty of maintaining a nuisance under provisions of sections 2382-4.

Intoxicating liquors: NUISANCE: INSTRUCTION. An instruction which permits the jury to find a violation of the liquor law at any time between the date alleged in the indictment, when within the statute of limitations, and the date of the indictment itself is not objectionable, as giving the jury too wide a range of time in which to find a violation of the law.

Same: UNLAWFUL DISTRIBUTION. A distribution of liquor among members of a club is a sale within the meaning of the statute; and where a defendant accused of maintaining a nuisance contends otherwise, he cannot complain of an instruction authorizing conviction if he used the place described in the indictment for the sale of liquors therein, or for the unlawful distribution of the same among members of a club.

Nuisance: DURATION: UNLAWFUL SALES: PRESUMPTION: INSTRUCTION. On a prosecution for maintaining a liquor nuisance proof of unlawful sales is admissible on the question of the intention with which the liquor was kept on the premises, and when the intent is thus shown it is presumed to continue until the con-

trary appears; so that where the duration of a nuisance is uncertain, but it appears that the period of time covered was within certain dates, an instruction permitting the jury to consider the entire time in determining the duration was proper, even though sales were not shown covering the entire period. Evidence held, however, to justify an inference that sales continued to the end of the designated time.

**Nuisance:** CHANGE OF LOCATION: ELECTION. Where it was developed in the progress of the State's evidence that the place where defendant kept intoxicating liquors was changed, refusal to require the State to elect which locality it would claim as the nuisance prior to the close of its testimony was not prejudicial, where all the evidence of intent received would have been admissible even though the State had elected in the first instance.

**Same:** UNLAWFUL SALES: EVIDENCE: INSTRUCTION. A scheme by which members of a club purchased liquor in common, that was kept in their rooms maintained as a general meeting place, with the understanding express or implied that any member might obtain a portion thereof for a money consideration to be drank by him or given to his guests, is an unlawful sale, and may be shown by incriminating circumstances as well as by direct evidence, in proof of maintaining a nuisance. The instruction in the instant case with reference to such unlawful sale is held to have sufficient support in the evidence.

**Instructions:** WHEN. COMPLAINT CANNOT BE MADE. A party cannot complain of an instruction as being an incorrect statement of the law, when the only error consists in its being more favorable to him than the law authorizes.

*Appeal from Mitchell District Court.*—HON. J. F. CLYDE, Judge.

TUESDAY, NOVEMBER 17, 1908.

INDICTMENT for maintaining a liquor nuisance. Plea, not guilty. Trial was had before a jury. Verdict of guilty, and judgment thereon. Defendant appeals. *Affirmed.*

*George E. Marsh,* for appellant.

*H. W. Byers,* Attorney General, *C. W. Lyon,* Assistant Attorney General, and *C. E. Salisbury,* County Attorney, for the State.

EVANS, J.—On October 12, 1907, an indictment was returned against the defendant, charging him with maintaining a liquor nuisance in the town of Osage, on or about the 1st day of January, 1906, and on other days between said date and the time of finding the indictment. The evidence introduced on behalf of the State on the trial tended to show the following facts: Some time in the latter part of 1905 or the beginning of 1906, the defendant had a conversation with W. H. Weaver, agent for the Illinois Central Railroad Company at the town of Osage. The subject of the conversation was the proposed shipment, from time to time, of certain packages to the defendant as consignee. It was contemplated that the packages under consideration would be identified and marked "Club No. 5." The defendant desired that such packages should come consigned to Club No. 5, but the agent declined such suggestion. The defendant instructed the agent to deliver the goods, when received in his absence, to C. F. Alchon or W. J. Simpson. After such conversation large quantities of the proposed goods were received at the railroad office, consigned to defendant, and delivered in accordance with the defendant's instructions. These packages purported to be shipped from brewing companies at Dubuque, Waverly, and Albert Lea, and a large number of the packages were marked "ale" or "beer." Weaver was examined as a witness on behalf of the State. He produced his records as station agent, including receipts signed by defendant for freight consigned to him and delivered principally to Alchon. The following is a list of such freight receipts, including a description of the contents of each package as it was marked thereon:

| Exhibit No. | Date | Kind | Weight | Consignee | Receipt by |
|---|---|---|---|---|---|
| 18 | May 5, 1906 | Ginger Ale. | 200 | Club No. 5...: ............ | W. D. Johns |
| 19 | May 7, 1906 | | | | |
| 20 | May 12, 1906 | Ginger Ale. | 170 | W. D. Johns............ | " " |
| 21 | May 15, 1906 | Beer ...... | 200 | Club No. 5. ............ | " " |
| 22 | May 17, 1906 | Ginger Ale. | 450 | W. D. Johns............ | " " |
| 24 | May 22, 1906 | Ginger Ale. | 200 | " " ............ | " " |
| 25 | May 23, 1906 | Beer .. .. | 200 | " " ............ | " " |
| 26 | May 29, 1906 | Beer ...... | 200 | " " ............ | " " |
| 27 | May 30, 1906 | Beer ...... | 200 | " " ............ | " " |
| 28 | June 1, 1906 | Ginger Ale. | 490 | W. D. Johns (5)............ | " " |
| 14 | June 1, 1906 | Beer ...... | 200 | " " ............ | " " |
| 29 | June 2, 1906 | Beer ...... | 200 | " " ............ | " " |
| 30 | June 5, 1906 | Beer ...... | 200 | " " ............ | " " |
| 31 | June 6, 1906 | Ginger Ale. | 200 | " " ............ | " " |
| 32 | June 7, 1906 | Beer ...... | 200 | " " ............ | " " |
| 33 | June 8, 1906 | Ginger Ale. | 290 | W. D. Johns............ | " " |
| 34 | June 8, 1906 | Beer ...... | 200 | " " ............ | " " |
| 35 | June 9, 1906 | Beer ...... | 200 | " " ............ | " " |
| 36 | June 11, 1906 | Beer ...... | 200 | " " ............ | " " |
| 37 | June 12, 1906 | Beer ...... | 200 | " " ............ | " " |
| 38 | June 13, 1906 | Beer ...... | 200 | " " ............ | " " |
| 39 | June 15, 1906 | Ginger Ale. | 90 | " " ............ | " " |
| 40 | June 15, 1906 | Beer ...... | 100 | " " ............ | " " |
| 41 | June 19, 1906 | Ginger Ale. | 90 | " " ............ | " " |
| 42 | June 19, 1906 | Beer ...... | 200 | " " ............ | " " |
| 2 | June 23, 1906 | Ginger Ale. | 85 | " " ............ | " " |
| 3 | June 27, 1906 | Beer ...... | 200 | W. D. Johns, Club No. 5... | " " |
| 4 | June 29, 1906 | Ginger Ale. | 740 | W. D. Johns (5)............ | " " |
| 5 | June 29, 1906 | Beer ...... | 200 | " " ............ | " " |
| 6 | June 30, 1906 | Ginger Ale. | 90 | " " ............ | " " |
| 64 | July 3, 1906 | Beer ...... | 250 | " " (J) ......... | ........ ........ |
| 65 | July 3, 1906 | Beer ...... | 600 | " " (5) ......... | ................ |
| 66 | July 3, 1906 | Ale ...... | 250 | " " "D" ......... | ........ ........ |
| 43 | July 10, 1906 | Beer ...... | 200 | W. D. Johns, Club No. 5... | C. F. Alchon |
| 44 | July 13, 1906 | Beer ...... | 400 | W. D. Johns, Club 5... | " " |
| 45 | July 14, 1906 | Ginger Ale. | 290 | W. D. Johns, Club No. 5... | W. D. Johns |
| 46 | July 17, 1906 | Ginger Ale. | 200 | W. D. Johns (5)............ | C. F. Alchon |
| 12 | July 21, 1906 | Beer .:.... | 200 | " " ............ | " " |
| 47 | July 24, 1906 | Beer ...... | 200 | W. D. Johns, Club 5 ..... | " " |
| 48 | July 25, 1906 | Beer ...... | 200 | W. D. Johns.... | |
| 13 | July 30, 1906 | Beer ...... | 200 | W. D. Johns, "No 5" ..... | " " |
| 49 | July 28, 1906 | Beer ...... | 100 | W. D. Johns, Club (5)..... | " " |
| 50 | Aug 4, 1906 | Beer ...... | 400 | W. D. Johns, No. 5..... | " " |
| 7 | Sept. 13, 1906 | Beer ...... | 270 | W. D. Johns ..... | W D Johns |
| 8 | Sept. 21, 1906 | Beer ...... | 270 | " " ............ | C. F Alchon |
| 9 | Sept. 25, 1906 | Beer ...... | 270 | " " ............ | " " |
| 10 | Sept. 27, 1906 | Beer ...... | 270 | | " " |
| 11 | Sept. 29, 1906 | Beer ...... | 270 | W. D. Johns, Club No. 5 . | " " |
| 15 | Oct. 2, 1906 | Beer ...... | 180 | W. D. Johns, No. 5 ... | " " |
| 16 | Oct. 4, 1906 | Beer ...... | 270 | W. D. Johns, Club No. 5 .. | " " |
| 51 | Oct. 6, 1906 | Beer ...... | 270 | W D Johns, Club No. 5 .. | " " |
| 52 | Oct. 12, 1906 | Beer ...... | 360 | W. D. Johns, Club No. 5... | " " |
| 61 | Mch. 28, 1907 | Beer .... | 90 | W. D. Johns | W D. J. |
| 53 | May 11, 1907 | Ale ...... | 200 | " " ............ | W. D. Johns |
| 54 | May 25, 1907 | Beer ...... | 250 | " " ............ | |
| 62 | June 24, 1907 | Beer ...... | 250 | " " ............ | W. H. Weaver, Orig. bill receipt is for payment frt. cges. No r'ct for No 57 Duplicate of No. 57 |
| 57 | Aug. 22, 1907 | Beer ..... | 90 | W D Johns ......... { | |
| 56 | Sept. 14, 1907 | Beer ...... | 250 | " " ............ | W. D. Johns |
| 55 | Sept. 18, 1907 | Beer ...... | 250 | " " ............ | J. R. W |
| 60 | Sept. 18, 1907 | Ginger Ale. | 90 | T J Henderson ... ..... | W D Johns |

These packages so delivered purported in large part to contain intoxicating liquors. They were delivered by Alchon at certain rooms, which were known as the headquarters of a certain "Club No. 5." Until about the middle of May, 1906, these headquarters were located in rooms over Adington's butcher shop. About the date named they

removed their headquarters to certain rooms over Gregory & Weston's drug store. The liquors in question were disposed of in some manner at such rooms. The details of the method by which it was done are not very fully set forth in the evidence. The witness Hemann was examined by the State on that question. He had often been at headquarters, and had participated in the disposition of the liquors. At the time of such participation he was undoubtedly familiar with the details. But at the time of the trial there had been some impairment of memory; whether from natural or moral causes does not appear. He did remember, however, that the defendant was present at some of the times that he was there. This witness usually obtained and drank some of the liquors when present. It is a fair inference from his testimony that that was his usual purpose in going there. He denied, however, that he ever paid for the liquor. He only paid an assessment of some kind that was used for some purpose. "They assessed the members," he testified.

I. Appellant's first complaint is stated in the following language: "The conduct or transactions of the defendant disconnected with the use of the place are wholly immaterial and incompetent for the purpose of establishing guilt of the offense charged. The consignment to, or receipt by, one of considerable quantities of liquor may, under certain circumstances, give rise to a presumption of unlawful sale, but such fact has never been held, by any authority, to create the slightest presumption that such liquors were kept for sale or sold by the consignee in any particular building or place." It is sufficient answer to this that the identity of the place and the keeping thereof was proved by the State by affirmative evidence, and that the State did not rely upon any presumption for that purpose. Counsel concedes that the large quantity of intoxicating liquors consigned to the defendant and received by him from time to time raised a

1. INTOXICATING LIQUORS: nuisance: evidence.

presumption of unlawful sales. The State traced this in-
toxicating liquor from the freight office to a particular place.
In view of the fact that the liquors were consigned to
the defendant with his knowledge, the State was entitled
to the presumption that they were owned by him. In-
asmuch as the State traced the liquor so consigned to the
particular rooms, and proved the presence of the defendant
there, and proved that some of the liquors were disposed
of to Hemann while the defendant was there, and that
Hemann paid an assessment for some purpose, it was
sufficient evidence to warrant the jury in finding that the
defendant was owning and keeping intoxicating liquors,
at a particular place, with intent to violate the law, and
that he was therefore using this particular place for the
purposes prohibited within the meaning of the statute.

II.   At the close of the evidence the defendant moved
for a directed verdict, on the ground that the evidence was
wholly insufficient to warrant a verdict of guilty. The
same point was urged in a motion for a new trial, and in
a motion in arrest of judgment. It is now presented to
us in many forms, including exceptions to each of the in-
structions given by the court. What we have already said
indicates our view as to the general sufficiency of the
evidence to support the verdict. It may be added that the
evidence on the part of the State came from reluctant wit-
nesses, and that it is not as complete in its details as it
might otherwise have been. There is, however, evidence
tending to establish every material fact, even though it be
weak at some points. The defendant did not see fit to
offer any contradictory evidence. The evidence on behalf
of the State is undisputed at every point. The facts tes-
tified to and the fair inferences which a jury could draw
therefrom are quite abundant to sustain the verdict.

In fairness to counsel, however, it should be said
at this point that he contends specially that the evidence
on behalf of the State disclosed affirmatively a state of facts

which negatived the defendant's guilt of the particular of-
2. SAME: of-     fense charged in the indictment. The argu-
fenses: stat-
utes.     ment is that the State's evidence shows the
defendant, if guilty at all, guilty of violating the provisions
of section 2404 of the Code; that if he was guilty under
the provisions of that section, he could not be guilty of the
offense charged in the indictment, on the theory that the
punitive provisions of that section are exclusive. The
argument is not well taken. It often happens that a
defendant, by the same criminal act, violates more than
one criminal statute. And it is not true as a legal propo-
sition that, if his criminal act is covered by one statute,
it cannot be covered by another. If a person keep or use
a particular place, and own or keep therein intoxicating
liquors for the purpose of violating the provisions of sec-
tion 2404, we know no reason why he should not be
deemed guilty of a nuisance under the provisions of sec-
tions 2382 and 2384.

Section 2404 is as follows: "Every person who shall,
directly or indirectly, keep or maintain by himself or by
associating or combining with others, or who shall in any
manner aid, assist or abet in keeping or maintaining any
clubrooms, or other place in which intoxicating liquors are
received or kept for the purpose of use, gift, barter or sale,
or for distribution or division among the members of any
club or association by any means whatever, and every
person who shall use, barter, sell or give away, or assist
or abet another in bartering, selling or giving away any in-
toxicating liquors so received or kept, shall be punished
by a fine of not less than one hundred dollars nor more
than five hundred dollars, or by imprisonment in the county
jail not less than thirty days nor more than six months."
This section is a part of chapter 6, title 12. Section 2382
is the first section of such chapter. This section 2382
prohibits any person, directly or indirectly, or upon any
pretense, or by any device, to exchange, barter, dispense,

or own, or keep, or be in any way concerned in owning or keeping, any intoxicating liquors "with intent to violate any provision of this chapter." To violate the provisions of section 2404 is to violate "a provision of this chapter." It follows, if any person be in any way concerned in owning or keeping intoxicating liquor with intent to violate the provisions of section 2404, he is already guilty of violating the provisions of section 2382. If he uses any particular place for the owning or keeping of such intoxicating liquor, "for any of the purposes herein prohibited," he is guilty of a nuisance under the provisions of section 2384.

III. Instruction No. 6, given by the court, was as follows: "If you find from the evidence, and beyond a reasonable doubt, that at any time between January 1, 1906,

3. INTOXICATING LIQUORS: nuisance: instruction.

and October 12, 1907, the defendant continued or used the rooms described in the last instruction for the purpose of selling intoxicating liquors therein, or permitting the same to be sold therein, unlawfully, or keeping the same therein for unlawful purposes, and if you further so find that intoxicating liquors were within that time sold or kept for sale or other unlawful purposes in said rooms, then he is guilty of the offense charged herein, and you should so find. If the State has failed to establish any one or more of the matters stated in this instruction, then your verdict should be for the defendant." The defendant complains of this instruction, first, because there was no evidence tending to show guilt on the part of the defendant prior to May, 1906, and no evidence tending to show the defendant guilty at a time as late as October 12, 1907. The argument is therefore that the instruction permitted the jury to find the defendant guilty regardless of the evidence. The instruction is not fairly subject to this criticism. January 1, 1906, was the date charged in the indictment, and October 12, 1907, was the date of the finding of the indictment. It is quite usual for trial courts, in this class

of cases, to instruct the jury that it can only consider acts done prior to the finding of the indictment, and within the period of the statute of limitations, which is three years. In this case the court limited the consideration of the jury to a more circumscribed period. Under the evidence in this case it was unnecessary. It was nevertheless manifestly intended by the court as a protection to the defendant, and no prejudice could possibly result to the defendant because of it.

It is argued that the club did not occupy the rooms over Gregory & Weston's drug store until May, 1906, and that the effect of this instruction was to permit the jury to find the defendant guilty for the alleged use of the rooms over Adington's butcher shop prior to May, 1906. But in another instruction the court specifically instructed the jury that they could only find the defendant guilty, if at all, for using the rooms over the drug store.

IV. The defendant makes further objection to instruction No. 6, in that it assumes that the evidence tends to show that defendant used the rooms for keeping liquors therein "for any unlawful purpose" other than making sale thereof. The argument of counsel is that unlawful sale of intoxicating liquors was the only unlawful purpose for which the defendant could be said to use the place, and that the language of the court implies that there was some other unlawful purpose. The thought conveyed by this instruction is that, even though the intoxicating liquors were not kept in the place for "sale," within the meaning of the term as usually understood, yet if they were kept therein for the purpose of distributing the same through the instrumentalities of a club, such purpose was unlawful, as defined by the court in instruction No. 9. That the distribution of intoxicating liquors among the members of a club constitutes a sale within the meaning of the law is well settled by the weight of authority. See *South Shore Country Club v. People,*

4. SAME: unlawful distribution.

228 Ill. 75 (81 N. E. 805, 12 L. R. A. (N. S.) 519, 119
Am. St. Rep. 417); *People v. Law and Order Club,* 203
Ill. 127 (67 N. E. 855, 62 L. R. A. 884); *State v. Easton
Club,* 73 Md. 97 (20 Atl. 783, 10 L. R. A. 64); *Mohrman
v. State,* 105 Ga. 709 (32 S. E. 143, 43 L. R. A. 398, 70
Am. St. Rep. 74); *State v. Mercer,* 32 Iowa, 405. This
part of instruction No. 6 was therefore unnecessary. The
details of the method of such distribution are not of con-
trolling importance. But in view of the defendant's con-
tention that such distribution of intoxicating liquors was
not a sale, he is in no position to complain if the court ac-
cepted his definition and classified the act as something
other than a sale. The material question is, was such pur-
pose unlawful? The trial court held that it was, and
we so hold now.

V. Defendant complains further of instruction No. 6,
because it incorporated the date October 12, 1907. He
claims that this amounted to an implication that the jury
might find the defendant guilty of maintain-
ing a nuisance down to that date. He con-
tends that there was no evidence of any sales
as late as October 12, 1907, nor of any use
or occupancy of the premises later than 1906. He contends
that the evidence shows conclusively that the use and oc-
cupancy of the building by the club terminated in Septem-
ber or October, 1906. We do not think that the language
of the instruction carried to the jury the implication which
is charged against it. The defendant was charged with but
one offense. It was a continuing offense, presumably cov-
ering some period of time. On what particular date it
commenced, and on what particular date it terminated, was
uncertain under the testimony. It was certain, however,
under the testimony that the period of time covered was
between the two dates set forth in instruction No. 6. The
defendant was not charged with unlawful sales. The only
purpose of proving unlawful sales was to show the intent

5. NUISANCE: duration: un- lawful sales: presumption: instruction.

for which the liquors were kept upon the place. That intent, being once established, would be presumed to continue until the contrary appeared. The State could prove such intent by evidence of sales, many or few. The fact that no sales were proved subsequent to a given date raised no presumption in favor of defendant that his unlawful intent ceased on such date. The defendant contends that the evidence shows conclusively that the defendant ceased the use of the premises in question in September or October, 1906. In this contention the defendant attaches undue weight to some very uncertain testimony. Hemann testified: "I don't know how long the club was running. It seems to me it run from June some time until September, 1906." Defendant's witness Lohr testified: "My recollection is that the rooms were vacated by the club in the fall of 1906. I am not sure about that." This evidence can hardly be called conclusive. In any event, it relates to the continuance of the club. In this evidence there is not the slightest reference to the question whether defendant continued to keep intoxicating liquors in these rooms. The unlawful use of these rooms by the defendant so as to constitute a nuisance, being once shown, might well be presumed to continue until the contrary appeared. If this be not so, it does appear affirmatively from the evidence that the consignments of intoxicating liquors continued to come to him in the same way until September, 1907. If, therefore, there was no presumption, as a matter of law, of the continuance of the nuisance, the evidence was sufficient to warrant an inference by the jury that it did so continue.

VI. While the State was introducing its evidence on the trial, it appeared from the testimony of one of its witnesses that the headquarters of Club No. 5, being also the place where the intoxicating liquors were kept, were moved, in May, 1906, from the Adington rooms to the Gregory & Weston

6. NUISANCE: change of location: election.

rooms. The defendant thereupon at once moved that the State be required, then and there, to elect which locality it would claim as the alleged place of the nuisance. The court overruled the motion, with a suggestion, however, to the defendant that the motion might be renewed at the close of the State's evidence. Of this ruling the defendant complains. The action of the court was eminently proper. At the close of the State's evidence the defendant renewed its motion, and it was sustained by the court. The contention of the defendant that he was prejudiced by the first ruling of the court is without any merit. There was no evidence received on behalf of the State which would not have been admissible on the question of intent, even though the State had elected in the first instance.

VII. Instruction No. 9, given by the court, is as follows: "(9) If the rooms in question over Gregory & Weston's drug store were used as a clubroom, and members of the club during the time named in the indictment bought intoxicating liquors and kept the same therein, and they were owned at first by all members of the club jointly or in common, and no member owned individually any particular part of such liquor, and if there was an agreement, either express or implied, among the club members that at any time after the liquors were put in said rooms any member might become the owner in his individual capacity of some particular portion of said liquor, and had the right to drink the same or give it to his guests for individual use, and such agreement was upon the express or implied understanding that the user who was a member of the club should at some time pay to or for the club a money consideration for the liquor so used, and that such an arrangement was carried out by the members of the club in the rooms in question, then there was a sale of the shares of all the other club members in the common liquor to the individual who used and paid therefor, and the transaction would

7. SAME: unlawful sales: evidence: instruction.

be a violation of the statute prohibiting sales of intoxicating liquors. If you believe from the evidence that unlawful sales of intoxicating liquors were made in the rooms in question at any time included in the indictment, and that the defendant used those rooms during the time, either alone or with others, and he in any manner aided or assisted in such sales, either as principal or agent for the club or any one else, then he is guilty under the statute, and you should so find."

Defendant complains of this instruction as being based upon various assumptions that have no support in the evidence. He contends that there is "not a particle of evidence" upon which to found any of the assumptions of the instruction. It is doubtless true that some of the assumptions are not supported by direct evidence. But the State was not confined to direct evidence. In addition to the direct evidence there are well proven circumstances which are significant and incriminating. Considering, therefore, the direct evidence and the circumstantial evidence and the inferences which a jury might fairly draw from both, we think that every hypothesis set forth in the instruction is sustained by sufficient evidence to justify the instruction.

But counsel contends that the instruction is not a correct statement of the law. We may grant that. It is incorrect, however, only in the sense that it is more favorable
8. INSTRUCTIONS: to the defendant than he was entitled to.
when com-      From our views already expressed it follows
plaint cannot
be 'made.      that this instruction could properly have been
made very brief. But the trial judge solved his doubts as to the law in favor of the defendant, and guarded his rights by laying a greater burden upon the State than the law required, and this furnishes no ground of complaint to the defendant.

VIII. A number of other questions are argued by defendant's counsel, but they present, from different points

of view, substantially the same questions which we have now discussed. The views we have already expressed in the foregoing are decisive of them all, and it will serve no useful purpose for us to pursue them in detail. We have gone through the record carefully, and are satisfied that the merits of the case are with the State.

The judgment of the court below is *affirmed.*