G. W. Shideler, Appellant, v. Tribe of the Sioux, et al., Appellees.

Intoxicating liquors: ILLEGAL DISTRIBUTION: PLACE: PUNISHMENT.
1  A corporation, though organized for a lawful purpose, which maintained a place in a public street walled off by canvas and used as a place for entertaining its guests, and there received and distributed intoxicating liquor to its members and guests, was guilty of violating the statute prohibiting the keeping or maintaining of a clubroom or other place in which liquors are received or kept for use, gift or sale; as the statute not only refers to a clubroom, but includes any place maintained for disbursing liquor; and a violation of the statute in such manner is punishable under the provisions of the Code relating to illegal sales, and the abatement of nuisances.

Same: The dispensing or distribution of intoxicating liquors among
2  the members of an organization constitutes an illegal sale, within the meaning of Code section 2382, as amended, regardless of whether the same is done in any place.

**Same:** KEEPING OF LIQUOR. An organization which receives and immediately distributes intoxicating liquor among its guests is guilty of violating the statute. It is not necessary that there should be any permanent keeping.

**Same:** GOOD FAITH DISTRIBUTION. Where an organization actually received and disbursed intoxicating liquors to its members and guests, it did the acts prohibited by the statute, and the question of its good faith or that of its guests is immaterial. It was also immaterial that there was no profit in the transaction, or that it was incidental to the main purpose of the organization.

**Same:** INJUNCTION: ABATEMENT OF NUISANCE. Where a corporation unlawfully distributed liquor among its members and guests, and its officers claimed the right and expressed the intention to continue to do so, the evidence authorized an injunction restraining the further illegal acts of the corporation and its members actually participating therein.

*Appeal from Woodbury District Court.*—HON. WILLIAM HUTCHINSON, Judge.

SATURDAY, FEBRUARY 15, 1913.

ACTION for injunction. Plaintiff's petition was dimissed and the injunction denied. Plaintiff appeals.—*Reversed* as to some defendants; *Affirmed* as to others.

*John F. Joseph,* for appellants.

*Henderson & Fribourg,* for appellees.

PRESTON, J.—I. The members of the defendant association are good Indians, representative young business men of Sioux City, incorporated for a proper purpose, to wit, to advance the business interests of their home city. The evidence is undisputed, and the question is whether, under the facts, they have violated section 2404 and other provisions of the Code in dispensing and distributing intoxicating liquor to their members and visiting guests.

The facts, as shown by the record, are, as testified to by the secretary of the organization, who was called as a witness for plaintiff: That the defendant Tribe of the Sioux is an auxiliary of the Commercial Club, a boosters' organization, as he calls it, for Sioux City. That it is incorporated, with a president, treasurer, secretary, and a board of directors. That it is not strictly a secret organization; but there is a form of initiation for the entertainment of out of town business and professional men, when guests of the organization. The meetings were held for the entertainment of such guests, who came upon invitation. That the association has no other purpose but promoting trade in the surrounding territory. It has no clubrooms of any kind, nor any office. It does not own any meeting place. There are between eleven and twelve hundred members, who pay a fee of $5. During the summer and fall of 1911, soon before the commencement of this suit, it held four meetings. These meetings are called "powwows." There is a degree team for putting on what they call dramatic work. Dr. Garver is one of the committee to whom was referred the question of revising a ritual, and he had charge of the so-called ritualistic work in the degree team. The first meeting was in August, at which time the editors of northeastern Nebraska, northwestern Iowa, and southeastern Dakota were its guests. The meeting was held at the Auditorium. Following the meeting a lunch was served on Seventh street alongside of the Auditorium. A six or seven foot canvas wall was thrown about that portion of the street during the time the luncheon was served. A place about one hundred and fifty by sixty feet was shut off to the members of this organization and its guests. Refreshments were served, consisting of several hundred pint bottles of beer, coffee, ginger ale, etc. The luncheon was served on Seventh street by the entertainment committee of the Tribe of the Sioux. Later two such meetings were held during fair week, when practically the same condition existed as to the serving of a Dutch lunch. Beer, ginger ale, and other drinks were

served on the different occasions. Any of the guests or members who desired beer could take it. The leading wholesale houses and manufacturers of Sioux City had abolished the idea of giving trade excursions, as they had done in former years, and devoted the money to the entertainment of these fair week guests, with the aid of the Tribe of the Sioux. There was another such meeting held later, and under the same conditions. Upon these occasions the association rented the Auditorium, when it held its ceremonial entertainments. It has no meeting place at this time; nor has it ever had for any purpose. It has no headquarters, except by the courtesy of the board of directors of the Commercial Club, which has allowed the secretary's headquarters to be there. It was never the object or intention of the Tribe, nor any of its officers, that intoxicating liquors should be kept, used, or dispensed by the organization; and it never has been, except as here detailed. The members and officers never associated themselves for the purpose of having a clubroom or place where liquors could be used, kept, sold, or dispensed at any time. The Tribe has no understanding or arrangement among themselves, or anybody, for the purpose of in any manner, directly or indirectly, evading or violating any of the laws relative to intoxicating liquors. On the occasions when the meetings were held, about 4,000 business men from the surrounding country attended. They were served with luncheon in the street. The beer used was purchased by the Tribe, and was paid for subsequently by the organization. It was delivered on Seventh street. No beer was delivered in the Auditorium, but men were stationed in the door for the purpose of keeping any one from carrying beer into the building. No beer went into the building. No beer or liquor has ever been sold, directly or indirectly, by the association or any of its officers; and they never dispensed or gave it away, except as described herein. The beer used at the meeting was bought immediately before the meeting began, and what was left was immediately carted back to the wholesaler from

whom it was bought. The association was incorporated under the statute governing incorporations not for pecuniary profit, but was organized for business and social purposes. There were two reasons for holding the meetings in the street: One was so as not to embarrass the Auditorium Company, and the other was because it was too warm in the building. A committee had charge of the entertainments. Practically all the street and sidewalk on Seventh street along the Auditorium was securely fenced from the public, and men placed at the doors to see that none got in who had no right to be there, especially young men, minors, and boys. That part of the street so fenced off was lighted overhead with several hundred lights.

The witness also testified that he did not know whether the Tribe of the Sioux would have any more meetings or not, but that he presumed they would, and that he could not answer as to whether they would serve beer if the occasion should arise, and that the Tribe of the Sioux would have to change its methods, if it found it was not doing right. Says he took part in the functions; does not know whether the city gave its permission to use the street; that no violation of the law was intended, and they feel perfectly within their rights.

The foregoing is all the evidence introduced on the trial, and substantially as the witness gave it, as to the purposes of the organization, the manner of conducting their entertainments, and the conditions.

II.   Section 2404 reads:

Every person who shall, directly or indirectly, keep or maintain, by himself or by associating or combining with others, or who shall in any manner aid, assist or abet in keeping or maintaining, any clubroom, or other place in which intoxicating liquors are received or kept for the purpose of use, gift, barter or sale, or for distribution or division among the members of any club or association by any means whatever, and every person who shall use, barter, sell or give away, or assist or abet another in bartering, selling or giving

away, any intoxicating liquors so received or kept, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than six months.

Some of the questions in this case are ruled by the decisions of this court in *State v. Johns,* 140 Iowa, 125, and *Sawyer v. Frank,* 152 Iowa, 341. In these cases it was held that a person violating section 2404 is liable under sections 2382, 2384, and 2405 of the Code; and that the words "dispensing" and "distributing" are synonymous.

1. INTOXICATING LIQUORS: illegal distribution: place: punishment.

The defendants contend that under the facts shown there is no violation of law; that the defendant association is not a club; that it was not organized or maintained for the purpose of selling or distributing liquor; that no clubroom or place was kept, used, or maintained for the illegal use or distribution of liquors among its members; that the transaction in question differed in no way from the entertainment of guests by an individual at his private home; that it is not an offense for one to keep or purchase liquor for his own use and the use and entertainment of his guests; that what defendants did was not a subterfuge to evade the law; and that they acted in good faith in the matter.

It may be the impression that section 2404 refers only to a clubroom. To be sure, it does cover a clubroom; but we think it is broader. It provides that "every person who shall, directly or indirectly, keep or maintain, by himself or by associating or combining with others, or who shall in any manner aid, assist or abet in keeping or maintaining, any clubroom, or *other place* in which intoxicating liquors are *received* or *kept* for the purpose of use, . . or for *distribution,* or division among the members of any club or association by any means whatever," etc.

If the defendants kept a clubroom or *other place* in which liquors were *received* or *kept* for the purpose of use

or *distribution* among its members, by any means whatever, it would be a violation of the statute. The place walled off by the canvas tent in the street, if not a clubroom, was a place. A place applies not only to a building, but also to any inclosure, whether covered or not. *Brookline v. Hatch,* 167 Mass. 380, (45 N. E. 756, 36 L. R. A. 495) ; 30 Cyc. 1633. A tent, or a hole in the ground, or the like, would be a place, within the meaning of such a statute as this. The canvas wall used in this case would be none the less a place.

Furthermore, under section 2382 of the Code, as amended (Code Supp. section 2382), it is not necessary that the sale or dispensing be in a place. The dispensing or distribution of intoxicating liquors among the members of an organization constitutes a sale. *State v. Johns,* 140 Iowa, 133. A distribution of liquor, under the circumstances shown by the evidence in this case, would bring the parties within said section 2382. But considering the matter further as to section 2404.

2. SAME.

Beer was received and used there and distributed among the members of the defendant association. It was kept there also. The statute reads that "every person who shall keep or maintain a place," etc. The word "maintain," perhaps, has a broader meaning than the word "keep." Both words are used in this section; that is, every person who shall keep or maintain, etc.

3. SAME: keeping of liquor.

The defendant association and its managing officers received and kept this beer for the time being. It is not necessary that there should be any permanent keeping. It has been held under another statute, where the language is similar, "if a person keep a house resorted to for the purpose of gambling," that one act of gambling will complete the offense; and that it is as complete, if the house is kept for one day, as if kept for a year. *State v. Crogan,* 8 Iowa, 523; *State v. Cooster,* 10 Iowa, 453. And it has been held that proof of one sale of intoxicating liquor in a building is sufficient to constitute a nuisance. *State v. Reyelts,* 74 Iowa, 499.

If one transaction in distributing liquors among members is equivalent to a sale, and one sale is sufficient to constitute a nuisance, then surely the defendant association, in the different transactions shown by this record, violated the law. So it would seem that it is not necessary that the defendant should have owned the premises, or rented them for any particular length of time, or that it have a fixed place of meeting.

It may be conceded that the defendant association was organized for a proper and legitimate purpose, but that can make no difference. If they did the acts prohibited by law, it would be just as much a violation of the law as though they had been organized for that express purpose. It is hardly probable that an organization of this kind would incorporate and express its intention to sell or dispense intoxicating liquors contrary to law, if that was its purpose and intention.

It is urged by the defendants that they were not evading the law, but that they were acting in good faith, and that its guests were acting in good faith; but, as we have said, if they did the acts that the law prohibits, and kept the place, and used it for the purpose of distributing liquors, they would be guilty. The question of good faith does not enter into it. *State v. Mullenhoff*, 74 Iowa, 271. See, also, *South Shore Country Club v. People*, 228 Ill. 75, (81 N. E. 805, 12 L. R. A. [N. S.] 519, 119 Am. St. Rep. 417, 10 Ann. Cas. 383). And this would be true, even though the acts were done openly and without any concealment or evasion; nor does the statute read that if the parties distributed or dispensed the beer in good faith they would be excused.

4. SAME: good faith distribution.

Counsel for defendants cite the case of *Austin v. State*, 22 Ind. App. 221, (53 N. E. 481,) and quote therefrom at some length. They say they think it has an indirect bearing upon the liquor agitation in this state and the disposition of courts to legislate upon the subject of intoxicating liquors. We disclaim any such disposition, and call attention to the fact, which sometimes seems to have been forgotten, that the Legis-

lature has passed these laws; and we have been and are now trying to interpret them in such a way as to give force to the intention of the Legislature. That case is not at all in point, for the reason that there the defendant was in no way connected with the liquor traffic. He simply furnished liquor to an adult friend, as his guest, in his own private apartments, without price, and as an act of hospitality. The Supreme Court of Indiana held that the Legislature had not intended to go as far as to make this a crime. It is not claimed, and we think it could not be claimed, that section 2404 of our Code would prohibit such an act. The trouble is counsel for defendant assume that the acts done by the defendants in this case are the same as though a person should furnish a drink of liquor to his friend in his own apartments. The fact that there is no profit in the transaction is immaterial. *Sawyer v. Frank,* 152 Iowa, 341. Nor the fact that the distribution or dispensing of the liquor is only incidental to the main purpose of the organization. *South Shore Country Club v. People, supra.*

The defendants did keep a place in which intoxicating liquors were received and kept for the purpose of use and distribution among its members, and, we think, clearly violated the law. It is a legitimate inference that they will continue to do so in the street, or some other place unless restrained. The secretary, as a witness, said he presumed they would. They are claiming the right to do so. This is sufficient. *Bobzin v. Valve Co.,* 140 Iowa, 744; *Sawyer v. Botti,* 147 Iowa, 453.

5. SAME: injunction: abatement of nuisance.

III. Under the evidence there should be no injunction against the Auditorium Company. It is made a party defendant, but the evidence shows that no liquor was kept in the building; that no sales were made therein, and no distribution made therein. And we think there ought to be no personal injunction against the defendants Garver and Whitley. The testimony does not show that they had anything whatever to do with the distribution of the liquor. Garver

simply revised the ritual, and was in charge of the degree team in reference to the other branch of the work of the lodge, having nothing whatever to do with the dispensing or distributing of beer.

The plaintiff has not discussed the question as to his liability, apart from the others, and we do not know just what his theory is as to Garver, unless he claims that the mere fact that he is a member of the organization would make him liable. Under the circumstances of this case, we think that could not be so; the organization of the defendant Tribe being, on the face of it, for a legitimate and proper purpose. It is admitted that plaintiff's attorney is a member of the defendant organization, but has not made himself a defendant, so that, perhaps, we should take that as an indication that he does not claim that the mere fact of membership alone would make the members responsible.

The decree should run against the defendant Tribe of the Sioux and its officers and W. E. Holmes, secretary, who participated in the functions. The treasurer is not a party defendant.

The decree is reversed as to the parties hereinbefore indicated, and affirmed as to the defendants Garver, Whitley, and the Auditorium Company. The cause is remanded for a decree in harmony with this opinion, or the plaintiff may, at his election, have a decree in this court.

Reversed as to some, and Affirmed as to others.