STATE OF IOWA, appellee, v. ROBERT NELSON, appellant.

No. 49594.

(Reported in 98 N.W.2d 4)

July 24, 1959.

Wilson, Maley & Stamatelos, of West Des Moines, for appellant.

Norman A. Erbe, Attorney General, Hugh V. Faulkner, Assistant Attorney General, and Ray Hanrahan, County Attorney, for appellee.

OLIVER, J.—Defendant, Robert Nelson, operated, under a Class B permit, a beer tavern called Norwood Inn. He was indicted for keeping liquor where beer is sold as defined in section 124.31, Code of Iowa, 1954 (1958). Trial to a jury resulted in a verdict of guilty. From the judgment thereon defendant prosecutes this appeal.

In the evening of February 27, 1958, two deputy sheriffs checked appellant's tavern. One of them stepped behind the

bar and saw, in a leather purse lying upon a cooler, a pint bottle containing Bourbon whisky, subsequently determined to have an alcoholic content of 35% by weight. The purse contained also some canceled checks of appellant and a receipt and a bill addressed to him. Appellant, who was present and in charge of the tavern, was placed under arrest. He made no explanation about the bottle of whisky but telephoned his wife to take charge of the tavern. Upon her arrival she told the officers she had found the purse on a table in the tavern the evening before, and had placed it behind the bar.

At the trial appellant testified he and his wife had been on a trip for several days and had returned to the tavern only a short time before his arrest and that he had not gone behind the bar and knew nothing of the bottle of whisky or the purse. His wife testified she had found the purse in a booth in the tavern and, without checking its contents, had placed it upon a cooler behind the bar when she closed the tavern February 22, the Saturday evening before they had started their trip. A relative who operated the tavern during their absence testified he saw the purse on top of the cooler under the bar and on February 25 put some papers in it but saw no bottle in it.

■■ I. Code section 124.31 provides in part:

"Keeping liquor where beer is sold * * *. No liquor for beverage purposes having an alcoholic content greater than four percent by weight, shall be used, or kept for any purpose in the place of business of class 'B' permittees, or on the premises of such class 'B' permittees, at any time."

Appellant contends the word "kept" implies duration or permanence and there was no competent evidence of such duration. We do not agree the word "kept" as here used gives rise to any such implication.

The text in 51 C. J. S. 427 states:

"Kept. The preterit and past participle of 'keep' is a common English word with no very precise or exact signification. It has many significations, according to the subjects to which it is applied, and as it appears in the context, and it should be read as not intended to nullify the meaning of the word with which it is associated."

State v. Dahnke, 244 Iowa 599, 57 N.W.2d 553, states chapter 124 of the Code relating to beer and malt liquors must be construed in the light of chapter 123, entitled Iowa Liquor Control Act.

State v. Talerico, 227 Iowa 1315, 1321, 290 N.W. 660, 662, points out that chapter 124 recognizes legalized beer as being in a zone which borders upon intoxicating liquor, that its boundaries must be closely guarded to prevent abuses, and that the regulations "were in part purposed not only to prevent the sale of intoxicating liquors at said places but also to completely separate and divorce the beer business from any connection with the handling of intoxicating liquors containing more than four per cent alcohol."

Jacobs v. City of Chariton, 245 Iowa 1378, 1381, 65 N.W.2d 561, 568, involved the validity of the revocation of a licensee's beer and pool hall licenses, upon the ground he "intentionally possessed or willfully kept upon his licensed premises" a gambling device. See chapter 99A, Code of Iowa, 1954 (1958). Citing and discussing many authorities, the decision held proof of a single use of a pool table by the licensee, for gambling, was sufficient to support the charge upon which the revocations were based.

The statute involved in Shideler v. Tribe of the Sioux, 158 Iowa 417, 423, 139 N.W. 897, 899, 900, forbade the keeping of any "place in which intoxicating liquors are kept for the purpose of use * * * or sale" etc. That decision states: "The defendant * * * received and kept this beer for the time being. It is not necessary that there should be any permanent keeping."

In the language of State v. Crogan, 8 (Clarke) Iowa 523, 524: "The offense is as complete if the house is kept for one day, as if kept for a year."

State v. Alexander, Iowa, 169 N.W. 657, 658, states the offense of keeping a gambling house in violation of a statute (now Code section 726.1) is not necessarily a continuing one and may be complete even though it "is so kept and maintained, but for a single day or for any definite, measurable length of time."

To interpret Code section 124.31 as not forbidding that

intoxicating liquors be kept in a beer tavern temporarily would accord with neither the reasoning nor the result of these decisions.

Moreover, section 124.31 provides no such liquor "shall be * * * kept * * * at any time." The limitation of "kept" by the words "at any time" negatives the implication of duration or permanence contended for by appellant. We hold appellant's complaint that the proof liquor was kept was legally insufficient from the standpoint of duration is not meritorious.

■ II. Appellant contends there was no substantial evidence he knew the bottle of whisky was kept in his tavern before the officer found it. In this connection he points to his testimony, as well as that of his wife and one of the two other persons who assisted in operating the tavern, denying any previous knowledge of the whisky. Assuming proof appellant had such knowledge was necessary, there was no direct evidence thereof. However, there was substantial evidence that part of the bottle in the purse was clearly visible from behind the bar. This was circumstantial evidence tending to prove appellant as well as his wife and the employees in the tavern knew the bottle was kept there.

State v. Matthes, 210 Iowa 178, 190, 191, 230 N.W. 522, 528, quotes with approval: " 'But it is not necessary for the State to establish defendant's conscious possession of intoxicating liquor by direct testimony. This may be established by circumstantial evidence, and if the facts or circumstances in the case are such that it is reasonable to infer that the defendant did have such conscious possession, this would be sufficient to sustain his conviction.' "

State v. Bruns, 211 Iowa 826, 830, 232 N.W. 684, 686, states: "Under the facts and circumstances thus disclosed, the jury were warranted, if they were so inclined, in finding that the appellant had possession of the intoxicating liquors."

So, in the case at bar the evidence was sufficient to support a finding defendant had previous knowledge of the bottle of whisky in his tavern.

■ III. Code section 124.37 provides the punishment for violations of provisions of the chapter shall be a fine of from $300 to $1000 or imprisonment in jail for from three months

to one year, or both such fine and imprisonment. Appellant was sentenced to imprisonment in the Polk County jail for ninety days with the provision:

"IT IS the further judgment of the Court that the defendant, Robert Nelson, be and he is hereby paroled from said sentence during good behavior for the period of one year to J. Milton Moore, Polk County Parole Agent, on the condition that he enter into and abide by the usual written parole contract with said Parole Agent, and at the conclusion of said one-year period and not before, said defendant shall be discharged from said parole."

Appellant complains this was in contravention of Article I, section 17, Constitution of Iowa, which provides cruel and unusual punishment shall not be inflicted. The basis of this contention is that "the usual written parole contract", upon which his parole was conditioned and which he executed, contained a condition that he would not enter a place where beer was sold and, "Therefore, by accepting his parole, he is automatically precluded from his livelihood and from his business investment in the Norwood Inn."

This complaint is without merit for various reasons. One reason is appellant was not compelled to enter into the written agreement of which he now complains. He voluntarily chose the parole, thus conditioned, in preference to imprisonment in jail for ninety days. We are unable to visualize as cruel and unusual punishment, a parole which a convict, in effect, imposes upon himself, in preference to imprisonment in jail for ninety days.

Moreover, this jail term was only a fraction of the maximum punishment provided by the statute, which maximum does not constitute cruel and unusual punishment interdicted by Article I, section 17, of the State Constitution. State v. Di Paglia, 247 Iowa 79, 85, 86, 71 N.W.2d 601, 49 A. L. R.2d 1223; State v. Bowers, 197 Iowa 336, 197 N.W. 17; State v. Burris, 194 Iowa 628, 638, 639, 190 N.W. 38, 42, 43; State v. Holoubek, 246 Iowa 109, 110, 111, 66 N.W.2d 861; 24 C. J. S., Criminal Law, section 1978; 15 Am. Jur., Criminal Law, section 535.

Nor is the operation of a beer tavern a constitutional right. It requires a permit or license, the granting of which is subject to various conditions, regulations, and official decisions.

1060

Furthermore, section 124.31, for the violation of which appellant was convicted, provides: "A violation of any provision of this section shall be grounds for revocation of the permit." Under the circumstances it appears appellant had no constitutional rights to continue to operate his beer tavern, of which he could have been deprived by the contract he signed to secure his parole.—Affirmed.

All JUSTICES concur.