STATE of Iowa, Appellee,

v.

James Darrell BALDWIN, Appellant.

No. 63909.

Supreme Court of Iowa.

April 23, 1980.

Gregory A. Johnson, of Johnson & Phelan, Fort Madison, for appellant.

Thomas J. Miller, Atty. Gen., Jeanine Freeman, Asst. Atty. Gen., and R. David Fahey, Asst. Lee County Atty., for appellee.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, McGIVERIN, and LARSON, JJ.

HARRIS, Justice.

James Darrell Baldwin appeals, from his conviction of a lascivious act with a child, viz., soliciting a child to engage in a sex act in violation of section 709.8(3), The Code 1979. There was ample showing that Baldwin took outrageous liberties with a child at the time and place in question. But we are compelled to agree that the evidence was insufficient to support a conviction of the crime charged. We therefore reverse the trial court.

On a January Sunday afternoon Angela, a 12-year-old girl, was seated in the Fort Madison public library reading a book. Baldwin approached and told her that her posture would give her a cramped neck. He then asked about her taste in reading and her name and address. Angela responded but soon moved to another part of the room where Baldwin again approached her. He now asked Angela how old she was and said he had a good book to show her. Thereafter he led her to a rather remote upstairs part of the library.

For the most part, though not exclusively the upstairs of the library is used for children's books. On the way there Angela ignored Baldwin's remark that she must be either "padded" or mature for· her age. As they reached the back part of the building, Baldwin expressed his doubt that Angela's mother would like the idea of her going out with an older man.

Angela continued to walk behind Baldwin. Suddenly Baldwin turned and grasped Angela by the arm and swung her about and against the wall. She attempted

to push him back. With his hand on her shoulder he then kissed her on the forehead. Baldwin also put his hand down the front of her shirt. The record is not clear whether Baldwin's hand was inside or outside of her shirt. He did not succeed in touching the little girl's breast although the record would clearly support a finding that he attempted to do so.

Angela then kicked Baldwin, pushed him away, seized her books, and fled. As she left Baldwin said something by way of apology but Angela did not respond. No one else was upstairs so Angela ran about halfway downstairs toward the librarian's desk. Upon realizing Baldwin was not following her she walked the rest of the way.

Angela first appeared calm as she handed the book to a librarian to be checked out. When she heard the stairs creak from Baldwin's descent Angela told the librarian that a man was coming and that the librarian must prevent him from following her. At the librarian's suggestion Angela went behind the desk to call her mother. Angela began crying when speaking with her brother on the phone.

By then Baldwin was downstairs. He approached the desk and asked Angela to repeat the title of a book she had recommended to him. Angela remained crying and Baldwin checked out a book and left.

I. Section 709.8(3), The Code 1979, provides:

It is unlawful for any person eighteen years of age or older to perform any of the following acts with a child with or without his or her consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:

. . . . .

3. Solicit a child to engage in a sex act.

A "sex act" under the Iowa criminal code is defined by section 702.17:

The term *"sex act"* or *"sexual activity"* means any sexual contact between two or more persons, by penetration of the penis into the vagina or anus, by

contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

■ II. In arguing that Baldwin's conduct amounted to a solicitation for a sex act the State points to the heavy burden Baldwin faces in moving for a judgment of acquittal. We of course review the evidence in the light most favorable to the State. And, "[e]very legitimate inference which reasonably and fairly may be deducted therefrom will be used to aid the evidence. [Authorities.] . . . Our cases demonstrate a long-standing preference for submitting criminal cases to a jury if there is any substantial evidence tending to support the charge. [Authorities.]" *State v. Howard*, 284 N.W.2d 201, 203 (Iowa 1979). Direct and circumstantial evidence are of equal value. *State v. Jones*, 289 N.W.2d 597 (Iowa 1980). A trial court enjoys considerable discretion in ruling on motions for new trial. To overturn such a ruling an abuse of discretion must be shown. *State v. Harrington*, 284 N.W.2d 244, 251 (Iowa 1979).

In view of these axioms the State believes a solicitation under section 709.8(3) was shown, especially in light of a principle we announced in *State v. Render*, 203 Iowa 329, 331, 210 N.W. 911, 911 (1926):

The crime in question is, of necessity, of a secret, obscure, and hidden character, and proof of its commission is not easily obtained. A solicitation, which may bring the act within the terms of the statute, need not be in any particular form of words, and it may well be that solicitation, within the meaning of the statute, can be accomplished by gesture and other indication quite as effectively as by the use of any set or particular formula of language.

■ Responding, Baldwin concedes: "[I]n the case at hand the totality of the evidence may authorize a finding that the defendant solicited Angela for *some* sex-oriented purpose. There is no evidence to

support a finding that this purpose was to engage in a sex act . . . ." Significantly, the human breast has no part in the foregoing statutory definition of a sex act. The term "genitalia" pertains only to the reproductive organs. Dothar's Medical Dictionary (25th ed. 1975).

■■ III. Baldwin is on solid ground in insisting that the statute does not proscribe his conduct. There was evidence of an assault. The jury could have deduced, as Baldwin concedes, that his conduct was for some sex-oriented purpose. But there is nothing to indicate that sex-oriented purpose was to achieve a sex act specifically described in section 702.17. Rather the sex-oriented purpose might very well have been limited to the fondling of the little girl's breast.

Some states proscribe as a criminal act taking indecent liberties with children:

> Under statutes enacted in the exercise of the state power to protect the health and morals of infants, persons are prohibited from, and punishable for, taking indecent liberties with children; and various provisions denounce as an offense indecent fondling of infants, indecent assaults on them, and other indecent behavior with children. Indecent liberties referred to are such as the common sense of society would regard as indecent and improper. Such statutes have, generally, been held valid.

43 C.J.S. Infants § 97 at 344. Baldwin, however, was not charged with indecent liberties. Such an offense does not appear to be included within Chapter 709.

It was error for the trial court, on this record, to submit the case to the jury. This conclusion makes it unnecessary to consider Baldwin's other assignments of error.

REVERSED.