STATE of Iowa, Appellee,

v.

Mark Anthony MARTENS, Appellant.

No. 95–1876.

Supreme Court of Iowa.

Sept. 17, 1997.

Rehearing Denied Oct. 23, 1997.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, and Francine O'Brien Anderson, County Attorney, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Defendant, Mark Martens, was convicted by a jury of the crimes of third-degree sexual abuse, distribution of drugs to a minor, failure to affix a drug tax stamp, and possession of marijuana. He appeals from the convictions of third-degree sexual abuse and failure to affix a drug tax stamp. We affirm the conviction for sexual abuse and reverse and remand the conviction for violation of the drug tax stamp statute.

I. Background Facts and Proceedings

Fifteen-year-old H.A. reported to the police that her stepfather, Mark Anthony Martens, had sexually abused her and that he had also engaged in drug use at his residence. Martens was arrested and pursuant to the execution of a search warrant, marijuana, a marijuana plant, and drug paraphernalia were recovered from his residence and his person. Martens admitted possession and use of the marijuana to police and further conceded that he provided marijuana to his twelve-year-old son. Martens was charged with third-degree sexual abuse, distribution of drugs to a minor, possession of a controlled substance, and failure to affix a drug tax stamp. These convictions were in violation, respectively, of Iowa Code sections 709.4(2)(c), 124.406(1)(a), 124.401(3), and 453B.3 (1993).

The jury returned verdicts of guilty on all counts. The district court sentenced defendant to an indeterminate ten-year prison term for the sexual abuse conviction, a twenty-five-year term for distribution of drugs to a minor, a five-year term on the charge of violating the drug tax stamp statute, and a six-month term for possession of marijuana.

The district court ordered all terms to run consecutively, totaling a sentence of forty years and six months.

At trial, Officer David Simonsen testified that H.A. told him defendant Martens entered her bed and touched her underneath and at the top of her underwear but did not place his hand on her vagina. Officer Simonsen testified that H.A. stated Martens then touched her "butt" with his hand underneath her underwear, between her legs. Officer Simonsen then asked her if she meant "anus" and she said "yes." H.A. also stated that there was no digital penetration. Officer Simonsen further testified that H.A. stated Martens also touched her breast under her bra. H.A. further testified that when defendant stopped touching her, he laid on top of her, rubbed his body against her, and then left her bed. On cross-examination of Simonsen, defense counsel made it clear that H.A. had never herself stated that Martens touched her anus, but that officer Simonsen assumed from her description that she meant anus and injected the word into the discussion.

H.A. testified that Martens did not place his hand past her pubic hair when his hand was at the front of her underwear. She testified that defendant touched her "butt" in the back, although she did not use the word "anus." At one point H.A. stated that Martens touched the center of one of her "butt cheeks" not the division between the cheeks. H.A. also testified that Martens was not aroused and that his sexual organs were never in contact with hers. Apparently H.A. did not understand the meaning of the word "genitalia" so instead the term "sexual organs" was used.

The State introduced a laboratory report from the Division of Criminal Investigation that specified the weights of marijuana found at defendant's residence. Defendant objected to this evidence as misleading, stating that two of the exhibits in question contained mature stalks of marijuana which he claimed are excluded from the definition of marijuana and cannot therefore be included in the certified weight for which a tax stamp is required.

The district court overruled defendant's objection.

During deliberations, the jury sent a note to the court asking whether pubic hair was a part of the genitalia. The court's response, agreed to by both sides, was that the jury was required to deliberate without further elaboration provided by the court.

On appeal, defendant contends that there was insufficient evidence to show a "sex act" occurred because he made no contact with H.A.'s vagina or anus. Defendant claims that although H.A. said "yes" when officer Simonsen asked her if Martens touched her anus, the record reflects that H.A. and Simonsen were not thinking alike on the terminology used. Defendant also asserts that because there was no evidence that his sexual organs touched H.A.'s sexual organs, no sex act was committed.

Defendant also claims that his trial counsel was ineffective in failing to request that the jury be instructed, in response to its question, that pubic hair is not part of the genitalia for purposes of establishing a sex act under Iowa Code section 702.17. He argues that the question was important to the determination of whether he committed a sex act by having contact with the victim's pubic hair. He asserts that if the jury wrongly concluded that pubic hair is part of the genitalia, it wrongly convicted him.

Finally, defendant argues that stalks and stems should not have been included in the weight of the marijuana subject to taxation. Among other arguments, defendant points to a recent amendment to the definition of "dealer" which adds a new subparagraph covering "unprocessed marijuana plants." Defendant claims this amendment means that the legislature had not previously intended to include plant stalks in the definition of "substances containing marijuana," an already existing subparagraph in the prior legislation.

## II.   Scope of Review

Our review on questions of sufficiency of the evidence is to determine if there is substantial evidence to support the verdict of the jury. *State v. Monk,* 514 N.W.2d 448, 451 (Iowa 1994); *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). We review de novo claims of constitutional violations. *State v. Risdal,* 404 N.W.2d 130, 131 (Iowa 1987).

## III.   Effective Assistance of Counsel

A.   In order to establish a claim of ineffective assistance of counsel, defendant must show: (1) that counsel's performance fell outside the normal range of competency; and (2) that the deficient performance so prejudiced defendant as to give rise to a reasonable probability that, but for counsel's errors, the result in the proceedings would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 698 (1984); *State v. Heacock,* 521 N.W.2d 707, 710 (Iowa 1994); *State v. McKettrick,* 480 N.W.2d 52, 55 (Iowa 1992).

This claim is properly before our court on direct appeal from conviction. *See State v. Kellogg,* 263 N.W.2d 539, 543 (Iowa 1978). We have said that we will resolve a claim of ineffective assistance of counsel on direct appeal when the record, as here, adequately presents the issue. *State v. Buck,* 510 N.W.2d 850, 853 (Iowa 1994).

Defendant asserts that his counsel failed to render effective assistance by not objecting to the court's response to the jury's request for further instruction. During deliberations the jury sent the following question to the court. "Is pubic hair part of the genitalia area?" The trial court, with the agreement of defense counsel and the prosecutor, gave this response:

The jury is required to deliberate without any further elaboration or information being provided by the lawyers or the court on the subject addressed in your questions. You must rely on your individual and collective memories of the testimony and exhibits that were introduced and received as evidence in this case and nothing more.

Defendant argues that his counsel should have insisted that the court directly inform the jury that pubic hair is not part of the genitalia for purposes of defining sex act under Iowa Code section 702.17. Without

this instruction, defendant asserts the jury was allowed the possibility of convicting him based on an act that is not a crime under section 709.4(2)(c) because the act committed by defendant is not included in the definition of sex act. Defendant argues that a conviction under these circumstances would constitute a deprivation of his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The State argues that regardless of the merits of this issue there was sufficient evidence to convict defendant of committing a sex act by defendant's illegal contact with other parts of H.A.'s body, specifically her anus. The State cites *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), in support of this argument. *Griffin,* however, involved a question of insufficiency of the evidence, whereas the question in the case at bar pertains to legal errors and constitutional protections.

■ We have said that "[w]ith a general verdict of guilty, we have no way of determining which theory the jury accepted." *State v. Hogrefe,* 557 N.W.2d 871, 881 (Iowa 1996). For this reason, we reversed and remanded the case for a new trial in *Hogrefe.* Thus, the validity of a verdict based on facts legally supporting one theory for conviction of a defendant does not negate the possibility of a wrongful conviction of a defendant under a theory containing legal error. *See Erickson v. Wright Welding Supply, Inc.,* 485 N.W.2d 82, 86 (Iowa 1992) (holding that defendant in civil case was entitled to a new trial when trial court erred in submitting one of several theories of recovery and jury returned only general verdict); *Gordon v. Noel,* 356 N.W.2d 559, 564–65 (Iowa 1984) (same). In this case, even though the jury may have reached their determination of guilt on the theory that defendant touched H.A.'s anus, the basis for its decision is impossible to ascertain because of the general verdict.

According to the rule generally accepted, the court may, at the request of the jury, give further instructions, since the interest of justice requires that the jury have a full understanding of the case. It is usually said to be the duty of the court to give additional instructions when requested and a prejudicial refusal to do so has been held reversible error. 89 C.J.S. *Trial* § 475, at 118–19 (1955); *see also Stacks v. Rushing,* 518 S.W.2d 611, 614 (Tex.Civ.App.1974) (court's failure to clarify issue when requested by the jury was reversible error where failure to do so resulted in prejudice because of misinterpretation of issue by jury).

A number of courts have held that if the jury expresses confusion or lack of understanding of a significant element of applicable law, it is the court's duty to give an additional instruction. The refusal of a jury's request for an additional instruction in this situation may constitute reversible error. 75 Am.Jur.2d *Trial* § 1109, at 632–33 (1991); *see also Harrington v. Beauchamp Enters.,* 158 Ariz. 118, 761 P.2d 1022, 1025 (1988) (court erred in not giving answer to jury's question where question demonstrated confusion on the jury's behalf); *People v. Brouder,* 168 Ill.App.3d 938, 119 Ill.Dec. 632, 638, 523 N.E.2d 100, 106 (1988) (trial court committed reversible error when it refused defense counsel's tendered instruction where jury requested instruction, demonstrating confusion as to a question of law).

B. In deciding this issue, we focus on the part of Iowa Code section 702.17 that states:

The term "sex act" or "sexual activity" means any sexual contact between two or more persons by: ... contact between the finger or hand of one person and the genitalia or anus of another person....

Iowa Code § 702.17.

In *State v. Baldwin,* 291 N.W.2d 337 (Iowa 1980), we considered the meaning of "genitalia" in a case charging the commission of a lascivious act with a child by soliciting a child to engage in a sex act in violation of Iowa Code section 709.8(3). The evidence adduced at trial showed that the defendant touched only the victim's breast. We reversed the conviction on the ground that the human breast had no part in the definition of genitalia and therefore the defendant's action did not constitute a sex act under Iowa Code

section 702.17. We also noted that the term "genitalia" pertains only to the reproductive organs, referring to a medical dictionary definition. *Baldwin,* 291 N.W.2d at 340 (citing *Dothar's Medical Dictionary* (25th ed.1975)). Defendant takes this reference as definitively exclusive, arguing that since pubic hair is not a reproductive organ, it is not part of the genitalia. While we find that our statement in *Baldwin* is accurate in that the human breast is not a reproductive organ, and therefore not genitalia under the statute, we do not agree with defendant's conclusion that this holding controls on the issue now considered. A more specific examination of the meaning of "genitalia" and "reproductive organs" is necessary.

The word "genitalia" is defined as "the various external and internal organs concerned with reproduction." *Dorland's Illustrated Medical Dictionary* (28th ed.1944). The word "vulva" is defined in *Dorland's* as "the region of the external genital organs of the female, including the labia majora, labia minora, mons pubis, clitoris, bulb of the vestibule, vestibule of the vagina, greater and lesser vestibule glands, and vaginal orifice." *Id.* Other relevant definitions in *Dorland's* are:

"mons pubis"—the rounded fleshy prominence over the symphysis pubis.

"symphysis pubica"—the joint formed by union of the bodies of the pubic bones in the median plane by a thick mass of fibrocartilage; called also s. ossium pubis and pubics.

"pubic"—pertaining to or situated near the pubes, the os pubis, or regio pubica.

"pubes"—1. pubic hair; the hairs covering the pubis region. 2. regio pubica.

*Id.*

A further understanding of these terms is provided in *The CIBA Collection of Medical Illustrations.* 2 Frank H. Netter, M.D., *The CIBA Collection of Medical Illustrations* (7th prtg.1984). The exterior genitalia is described to include, in part, the following:

The *vulva* includes those portions of the female genital apparatus that are externally visible in the perineal region. The mons veneris, overlying the symphysis pubis, is a fatty prominence, covered by crisp, curly hair. From it, two longitudinal folds of skin, the *labia majora,* extend in elliptical fashion to enclose the vulval cleft. They contain an abundance of adipose tissue, sebaceous glands and sweat glands, and are covered by hair on their upper outer surfaces. The anterior commissure marks their point of union at the mons. Posteriorly, they are joined by a slightly raised connecting ridge, the posterior commissure or fourchette. Between the fourchette and the vaginal orifice, a shallow, boat-shaped depression, the fossa navicularis, is evident. The *labia minora* ... are thin, firm, pigmented, redundant folds of skin which anteriorly split to enclose the clitoris; laterally, they bound the vestibule and diminish gradually as they extend posteriorly. The skin of the small labia is devoid of hair follicles, poor in sweat glands and rich in sebaceous glands....

*Id.* at 90.

■ From these medical terms it is clear that the term "genitalia" broadly describes and includes many organs associated with the reproduction apparatus. Included is the vulva, which includes the symphysis pubis, a prominence covered by hair. Thus, anatomically, pubic hair is included in the term "genitalia" and is a part of the "genitalia area."

In *Clark v. State,* 558 S.W.2d 887 (Tex. Crim.App.1977), the defendant was convicted of indecency with a child. The Texas statute prohibited touching of "any part of the genitals of another person ... with intent to arouse or gratify the sexual desire of any person." *Clark,* 558 S.W.2d at 888 (citing Tex. Penal Code Ann. § 21.01(2) (West 1974)). The court construed the statutory language "any part of the genitals" to include more than just the vagina and found that the definition of genitals includes the vulva which immediately surrounds the vagina. *Id.* at 889 (citing *Ball v. State,* 163 Tex.Crim. 214, 289 S.W.2d 926 (1956); *Pendell v. State,* 158 Tex.Crim. 119, 253 S.W.2d 426 (1952)).

■ If the jury concluded in its deliberations that pubic hair is part of the genitalia as a fact of anatomy, it would have been a correct determination. A conviction based on this understanding of the law would have

been legally correct. In resolving defendant's ineffective assistance of counsel claim in light of this finding, it is not necessary for us to address the first prong of the two-part test established in *Strickland,* whether counsel performed incompetently, because we find no prejudice resulted. Counsel's failure to object to the court's refusal to further instruct the jury was not prejudicial. The instruction defendant has proffered is not consistent with our finding that the pubic hair is part of the genitalia. Therefore, defendant has no legal basis for claimed error on the issue.

### IV. Sufficiency of Evidence

■ Defendant's claim here is that the evidence is too weak and legally insufficient to prove that a sex act was committed by defendant. In our review we are mindful that our cases demonstrate a "long-standing preference for submitting criminal cases to a jury if there is any substantial evidence tending to support the charge." *State v. Howard,* 284 N.W.2d 201, 203 (Iowa 1979) (citations omitted). Defendant points to H.A.'s use of the word "butt" instead of anus in her testimony, claiming confusion in her answers and a failure of proof that a sex act was committed. However, our review of the totality of the testimony convinces us that the evidence was sufficient for submission and for the jury to convict beyond a reasonable doubt.

In *Clark v. State,* the defendant also claimed the evidence was insufficient to convict based on a claim that the victim's testimony was unspecific and inaccurate. *Clark,* 558 S.W.2d at 889. The victim, who was six years old, called her vagina her "little butt" or her "front butt." In holding that such language was sufficient to identify the genital area, the court sustained the convictions. *Id.* The court announced its reasoning as follows:

It is important to note that in a prosecution under Sec. 21.11, V.T.C.A., Penal Code, the victim is a child, and may well be very young. As such, the child may lack the technical knowledge to accurately describe parts of his or her body. Where the child has sufficiently communicated to the trier of fact that the touching occurred to a part of the body within the definition of Sec. 21.01, the evidence will be sufficient to support a conviction regardless of the unsophisticated language that the child uses. For this court to hold otherwise would be to frustrate the intent of the statute.

*Id.*

Although H.A. was fifteen at trial time, we do not deem her testimony in totality as too unspecific and insufficient to identify a digital touching of her anus by defendant. And her testimony was unchallenged that defendant touched her pubic hair which, as genitalia, is prohibited under Iowa Code sections 709.4 and 702.17. We reject this assignment of error and affirm defendant's conviction for third-degree sexual abuse.

### V. Drug Tax Stamp Conviction

■ Defendant was convicted of failure to have a drug tax stamp for possession of 42.5 grams or more of marijuana or a substance containing marijuana. The certified weights introduced in evidence included the weight of mature stalks of the marijuana plant. Defendant objected that the mature stalks should not be included in calculating the certified weight for which a tax stamp is required under Iowa Code section 453B.3.

Defendant's conviction was under chapter 453B of the 1993 Iowa Code, which defined a dealer as follows:

3. *"Dealer"* means any person who ships, transports, or imports into this state or acquires, purchases, possesses, manufactures, or produces in this state any of the following:

a. Seven or more grams of a taxable substance other than marijuana, but including a taxable substance that is a mixture of marijuana and other taxable substances.

b. Forty-two and one-half grams or more of a substance consisting of or containing marijuana.

c. Ten or more dosage units of a taxable substance which is not sold by weight.

However, a person who lawfully ships, transports, or imports into this state or acquires, purchases, possesses, manufac-

tures, or produces a taxable substance in this state is not considered a dealer.

Iowa Code § 453B.1(3). Defendant was charged with violating subsection (b).

The 1993 Iowa Code defined marijuana as follows:

17. *"Marijuana"* means all parts of the plants of the genus cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination.

*Id.* § 124.101(17).

Stalk has been defined as:

1. a. A stem or main axis of a herbaceous plant. b. A stem or similar structure that supports a plant part such as a flower, flower cluster, or leaf.

*The American Heritage Dictionary* 1187 (2d College ed.1985).

Defendant argues that under section 453B.1(3)(b) of the 1993 Iowa Code, the drug tax stamp law did not apply to the stalks and stems of the marijuana plant. In support of this construction defendant points out that: (1) the definition of "marijuana" in section 124.101(17) specifically excluded mature stalks of the marijuana plant; and (2) a marijuana plant, whole or cut up, is not a "substance containing marijuana" for tax stamp purposes under section 453B.1(3)(b). Defendant also points to the fact that in 1995 the legislature amended the definition of dealer by adding a new subsection to include within the definition a person who possesses "one or more unprocessed marijuana plants." Iowa Code § 453B.1(3)(c) (1997).

Defendant argues that this amendment evinces a legislative intent to classify and consider unprocessed marijuana plants in subsection (c) as an offense separate from the offense in subsection (b), which is based on the weight of processed marijuana or a substance consisting of or containing marijuana. *See id.* Had the legislature intended that a "substance ... containing marijuana" include mature stalks in determining weight under section 453B.1(3)(b) for drug tax stamp purposes, defendant contends it would have included that language in the 1993 Code and would not have amended chapter 453B in 1995 by adding subsection (c).

The State argues that marijuana stalk is included in the phrase "substance containing marijuana." *Id.* § 453B(3)(b). Regarding the amendment in 1995, the State claims this was done to provide charging alternatives between processed and unprocessed marijuana. The argument is made that under either alternative, the presence of mature stalk is irrelevant; that its weight should be included in computing the forty-two and one-half grams or more necessary under subsection (b), and its number should be counted (*i.e.* one or more) under subsection (c).

Our review of these statutes and the arguments advanced for their interpretation convinces us that defendant's objection was well taken. The proper construction of Iowa Code section 453B.1(3)(b) (1993), is that the gram weight computed under the statute cannot include the weight of marijuana stalks. This construction comports with the statutory language used in the 1993 Code and gives logical meaning to the intent of the legislature in amending the law in 1995 by adding subsection (c).

Defendant's objection on this issue should have been sustained. The State failed to prove that the certified weight, exclusive of marijuana stalk, met the gram weight specified under Iowa Code section 453B.1(3)(b), to prove the commission of the offense. *See State v. Morris,* 227 N.W.2d 150, 154 (Iowa 1975).

The defendant's conviction for failure to affix a drug tax stamp under Iowa Code section 453B.3 is reversed. The case is remanded for new trial on that charge.

Defendant's conviction for third-degree sexual abuse is affirmed.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

All justices concur except HARRIS, J., who concurs in result only.