# IN THE SUPREME COURT OF IOWA

No. 14–0889

Filed February 26, 2016

**STATE OF IOWA,**

    Appellee,

vs.

**AQUILES GONZALEZ ALVARADO,**

    Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Muscatine County, Mary E. Howes, Judge.

A criminal defendant contends there was insufficient evidence to convict him of lascivious acts with a child because the phrase "touch the pubes or genitals of a child" in Iowa Code section 709.8 requires skin-to-skin contact. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Benjamin Bergmann and Gina M. Christensen Messamer (until withdrawal) of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Tyler Buller, Jean Pettinger, and Louis S. Sloven, Assistant Attorneys General, and Alan Ostergren, County Attorney, for appellee.

**HECHT, Justice.**

A jury convicted Aquiles Alvarado of two counts of lascivious acts with a child because it concluded Alvarado inappropriately touched his granddaughter's genitals over her clothing on more than one occasion. *See* Iowa Code § 709.8(1) (2013).[1] Alvarado contends the evidence does not support his convictions because he only touched his granddaughter over her clothing and a person does not "touch the pubes or genitals of a child" within the meaning of section 709.8(1) if they do not make skin-to-skin contact. The district court and court of appeals both rejected Alvarado's assertion, and on further review, so do we. Therefore, we affirm Alvarado's convictions.

## I. Background Facts and Proceedings.

Alvarado co-owned a clothing store in Muscatine with his wife Maria Morfin, and he also worked there part time. The store had a sales floor, a back room that doubled as an employee break room and storage area, and a fitting room. Morfin, who only speaks Spanish, often operated the store with assistance from her bilingual nine-year-old granddaughter I.M., who served as an interpreter. On July 18, 2013, Morfin and I.M. were at the store when Alvarado arrived around 11:00 a.m. after completing a shift at his second job. He took over supervising I.M. and the store while Morfin went home for lunch.

After Morfin left, Alvarado asked I.M. to make him coffee using the coffee machine located in the store's back room. As I.M. was making the coffee, Alvarado entered the back room and turned off the lights. He

---

[1]The current provision is Iowa Code section 709.8(1)(*a*) (2015). The legislature renumbered several criminal statutes—including those prohibiting lascivious acts and indecent contact—in 2013 but did not make substantive language changes. 2013 Iowa Acts ch. 30, §§ 202–203; *see also State v. Ceretti*, 871 N.W.2d 88, 90 n.3 (Iowa 2015) (noting a few other criminal statutes that were renumbered in 2013).

hugged I.M., then kissed her upper chest and neck, reached between her legs, touched her genitals over her clothes, and told her, "I love playing with your beautiful body." After a brief time, he stopped abruptly and returned to the sales floor.

Although Morfin had intended to go home, she reached her car in the parking lot and remembered she needed a money order from the bank for a shipment of shoes to be delivered to the store later that day. She obtained the money order and returned to the store so that Alvarado would have it in case the shipment arrived while she was away. As she returned, she noticed the sales floor was empty and saw Alvarado quickly leaving the back room. She went into the back room, turned the lights on, and saw I.M. with a flushed red neck and upper chest. I.M. explained what had happened, so Morfin called her daughter (I.M.'s mother), who in turn contacted the police.

Based on I.M.'s report to an investigating officer that Alvarado had touched her genitals on several other occasions throughout the summer of 2013 before the incident at the store, the State charged Alvarado with four counts of committing lascivious acts with a child. *See id.* Alvarado pled not guilty and the case proceeded to trial. At trial, I.M. testified she had not alerted anyone about Alvarado's conduct before July 18 because she was scared.

Alvarado moved for a directed verdict of acquittal both after the State's evidence and after presenting his own, contending a conviction under section 709.8(1) must be supported by proof of skin-to-skin contact but the State proved only that he had touched I.M. over her clothing. The court denied both motions. The jury returned a verdict convicting Alvarado of two counts of lascivious acts with a child.

Alvarado appealed his convictions, and we transferred the case to the court of appeals. That court affirmed, concluding section 709.8 is unambiguous because the verb "touch" means "to perceive or experience through the tactile sense" and I.M. testified she experienced a tactile sense despite the fact her clothes covered her genitals. Alvarado sought further review, and we granted his application.

## II. Scope of Review.

Alvarado asserts the evidence was insufficient to convict him. "We review challenges to the sufficiency of evidence presented at trial for correction of errors at law." *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). "[W]e review the evidence in the light most favorable to the State to determine if, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt." *State v. Pearson*, 514 N.W.2d 452, 456 (Iowa 1994).

The sufficiency of the evidence in this case turns on whether section 709.8(1) requires skin-to-skin contact—a question of statutory interpretation that we also review for correction of errors at law. *See State v. Paye*, 865 N.W.2d 1, 3–4 (Iowa 2015). If the statute requires skin-to-skin contact, the evidence is insufficient to support the verdict because all the trial testimony indicated Alvarado touched I.M. over her clothes. However, if the statute does not require skin-to-skin contact, I.M.'s testimony provides sufficient evidence to affirm the convictions.

## III. The Parties' Positions.

**A. Alvarado.** Alvarado contends section 709.8(1) requires skin-to-skin contact because section 709.12, the statute prohibiting indecent contact, specifically addresses touching over clothing, while section 709.8(1) does not. *See* Iowa Code § 709.12(2) (providing a person commits indecent contact with a child by "[t]ouch[ing] the clothing

covering the immediate area of the inner thigh, groin, buttock, anus, or breast of the child"). In Alvarado's view, this omission from section 709.8(1) was purposeful because it prevents overlap between the separate crimes of lascivious acts and indecent contact.

**B. The State.** The State responds with a multifaceted argument probing purported deficiencies in Alvarado's assertion. First, it contends, there is no need to consider section 709.12 because there is no ambiguity in the plain language and meaning of the word "touch" in section 709.8. *See People v. Pifer*, 350 P.3d 936, 938 (Colo. App. 2014) (concluding touching through clothes *and* a sheet "falls within the plain and ordinary meaning of 'touching'" because the victim experiences a tactile sense).

Second, the State asserts, section 709.8 and section 709.12 address separate parts of the body and "create disparate offenses based on the perceived harmfulness of each." In other words, the "pubes or genitals" described in section 709.8 are different from the inner thigh and groin described in section 709.12. *See State v. Shearon*, 660 N.W.2d 52, 56 (Iowa 2003) (contrasting lascivious acts with indecent contact by noting "the crime of indecent acts criminalizes the touching or fondling of non-genital body parts, e.g., inner thigh, groin, buttock, anus or breast"). Thus, given the distinction this court drew in *Shearon*, the State contends the two statutes simply address different harms and there is no overlap, nor does the omission of "over the clothes" language from section 709.8 indicate the legislature intended to permit over-the-clothes touching of the pubes or genitals.

Finally, the State contends interpreting section 709.8(1) to require skin-to-skin contact is unsupportable because it would produce absurd results. For example, if skin-to-skin contact is required, a person could

touch a child's naked genitals and not commit lascivious acts as long as they wear a glove—or even a thimble.

### IV. Analysis.

A "sex act" under section 702.17 includes "[c]ontact between the finger or hand of one person and the genitalia . . . of another." Iowa Code § 702.17. "[S]kin-to-skin contact is not required in order to establish a 'sex act' under section 702.17." *Pearson*, 514 N.W.2d at 455. However, this case does not directly involve section 702.17 because section 709.8 does not prohibit "sex acts." *See* Iowa Code § 709.8(1). Instead, the subsection under which the State charged Alvarado prohibits certain sexual touching. *See id.*

But that does not mean *Pearson* is irrelevant to our analysis despite its focus on different language. The gist of Alvarado's argument in this case is that touching under section 709.8 does not constitute "sexual contact" when the touching occurs through a layer of clothing. Yet "touch" means "to bring a bodily part into contact with." *Touch*, Merriam-Webster's Collegiate Dictionary (10th ed. 2002). The word "touch" literally references the word "contact." We conclude *Pearson*, though not directly controlling, remains relevant in this context.

**A. *Pearson*.** In *Pearson*, the defendant "masturbated by moving his covered penis against [the victim]'s clothed buttocks." *Pearson*, 514 N.W.2d at 454. We rejected his argument that the definition of "sex act" and "sexual contact" required skin-to-skin contact because there was "no language in the statute which would limit its scope in this way." *Id.* at 455. We further concluded the question whether an intervening material prevents sexual contact "must be determined on a case-by-case basis, considering the nature and amount of the intervening material":

> If the intervening material would, from an objective viewpoint, prevent a perception by the participants that the body parts (or substitutes) have touched, contact has not occurred. Thus, prohibited contact occurs when (1) the specified body parts or substitutes touch and (2) any intervening material would not prevent the participants, viewed objectively, from perceiving that they have touched.

*Id.* We were "confident that the legislature did not intend to immunize a defendant from liability for a sex act simply because he wore a condom which prohibited skin-to-skin contact." *Id.* at 456.

*Pearson* relied in part on the court of appeals decision in *State v. Phipps*, 442 N.W.2d 611 (Iowa Ct. App. 1989). In *Phipps*, the defendant "placed his hand inside a fourteen-year-old boy's jeans, but over the boy's underwear" and "rubbed the boy's genitalia." *Id.* at 611. Faced with an argument that skin-to-skin contact was required to constitute a sex act, the court declined to hold "that our legislators intended that a piece of clothing," especially a flimsy one, "would insulate a defendant from the term 'sex act.'" *Id.* at 613. The court also concluded any overlap in statutes was irrelevant because "[t]he mere fact defendant's conduct is or could be interpreted as falling within the confines of a different section does not preclude" a finding that it violated the one actually charged. *Id.*

**B. Overlap.** In Alvarado's view, interpreting section 709.8 to include touching over the clothes creates significant overlap between section 709.8 and section 709.12 and likely means any touching will be prosecuted as lascivious acts, a class "C" felony, instead of indecent contact, an aggravated misdemeanor. In other words, he contends, if section 709.8 does not require skin-to-skin contact, section 709.12 is superfluous.

Alvarado is correct that section 709.12 specifically references touching "the clothing covering" certain body parts. *See* Iowa Code

§ 709.12(2). However, if the statutes overlap, they would overlap even without that language, because section 709.12(1) prohibits fondling or touching the same body parts that might be covered by clothing in section 709.12(2). Thus, Alvarado's contention boils down to an assertion that "pubes or genitals" are the same as "inner thigh" or "groin." While those body parts may be only centimeters apart, we conclude the State's distinction—that the two statutes address slightly different conduct—makes more sense: section 709.8 prohibits genital contact of any kind, while section 709.12 prohibits contact of any kind with specified nongenital parts. *See Shearon*, 660 N.W.2d at 56.

To the extent it exists, the legislative history of section 709.12 also supports this distinction. In 1980, we held a defendant could not be convicted of lascivious acts for attempting to grope a twelve-year-old girl's breast. *See State v. Baldwin*, 291 N.W.2d 337, 338–40 (Iowa 1980). The defendant in that case could not be convicted for touching or fondling because a breast is not within the definition of "pubes or genitals," and in any event, he did not actually touch the girl's breast. *See id.* Furthermore, the defendant could not be convicted of soliciting a child to engage in a sex act because the definition of sex act proscribes sexual contact with a person's genitalia or anus and the purpose of his contact "might very well have been limited to the [touch]ing of the little girl's breast." *Id.* at 340; *see* Iowa Code § 702.17 (1979); *id.* § 709.8(3). Suggesting the defendant's conduct was still objectively wrong, just not a crime under existing law, we noted some states had statutes criminalizing indecent liberties with children but Iowa was not one of them. *Baldwin*, 291 N.W.2d at 340. ("Some states proscribe as a criminal act taking indecent liberties with children . . . . Baldwin, however, was not charged with indecent liberties. Such an offense does

not appear to be included within Chapter 709."). Just one year later, the legislature passed section 709.12. 1981 Iowa Acts, ch. 204, § 7. The timing of the enactment strongly suggests it was a response to *Baldwin*, intended to rectify what the legislature perceived as a specific gap in the law protecting children—not as part of a comprehensive legislative package revising section 709.8.

Additionally, we have previously rejected a contention that reading statutes in their entirety always means an action expressly prohibited under one section is permitted in another similar section that does not make an express prohibition. *See State v. Whetstine*, 315 N.W.2d 758, 760 (Iowa 1982). In *Whetstine*, we reasoned that a person can commit a sex act with a finger although section 702.17 did not expressly provide as much at the time (and another statute, which also defined sex act, did). *Id.* at 760–61. The same logic holds true here.

Finally, even if the statutes did overlap, common ground would not be problematic. Overlap only prevents double convictions or double punishments, not a single conviction on one charge based on the prosecutor's charging discretion. As we have explained:

> When a single act violates more than one criminal statute, the prosecutor may exercise discretion in selecting which charge to file. This is permissible even though the two offenses call for different punishments. It is common for the same conduct to be subject to different criminal statutes.

*State v. Perry*, 440 N.W.2d 389, 391–92 (Iowa 1989) (citation omitted); *see also State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001) ("When there is sufficient evidence to charge a suspect with a particular crime, it does not matter that his conduct may also constitute a violation of [another] offense with a lighter penalty."); *State v. Johns*, 140 Iowa 125, 131, 118 N.W. 295, 298 (1908) ("It often happens that a defendant, by

the same criminal act, violates more than one criminal statute. And it is not true as a legal proposition that, if his criminal act is covered by one statute, it cannot be covered by another.").

**C. Other States.** Most courts that have addressed similar questions under other states' statutes have concluded skin-to-skin contact is not required to sustain a conviction.

In *State v. Schnaidt,* the defendant was charged with "sexual contact" under South Dakota law—defined as "any touching . . . of the breasts of a female or the genitalia or anus of any person." *State v. Schnaidt,* 410 N.W.2d 539, 540 (S.D. 1987) (quoting S.D. Codified Laws § 22-22-7.1 (1985)). It was "undisputed that Schnaidt grabbed the child's genitals through the clothing," but he contended he did not violate the statute because he did not make skin-to-skin contact. *Id.* The court rejected this argument because it found "nothing in the statute to suggest that the prohibited conduct can only be committed by skin-to-skin contact" and the language was therefore unambiguous. *Id.* at 541. The court concluded that grabbing a "child's genitals through his trousers is . . . 'any touching' of his genitalia." *Id.* at 543. We relied on *Schnaidt* in *Pearson,* 514 N.W.2d at 455, and we conclude it again has persuasive value for us in this case. "Any touching" is not *exactly* the same as "touch," but the difference is slight.

North Dakota also considered language criminalizing "any touching of the sexual or other intimate parts" of a child and concluded a defendant who "patted and poked at [the fifteen-year-old victim's] 'private area' " over her pajamas and underwear committed "touching" within the meaning of the statute. *State v. Brown,* 420 N.W.2d 5, 6 (N.D. 1988) (quoting N.D. Cent. Code § 12.1-20-02(4) (1985)). The court concluded "[i]t would be an absurd result . . . to determine that a person cannot

perceive by the sense of feeling the 'sexual or other intimate parts' of a person because clothing was interposed between such a bodily part and the offender." *Id.* (quoting N.D. Cent. Code § 12.1-20-02(4)).

In *State v. Samson*, the highest court in Maine considered whether a skin-to-skin requirement would frustrate the legislature's intent and concluded it would:

> The legislative intent was to protect children against the perpetration of sexual indignities to their person in a manner abhorrent to society and to save them from being subjected to iniquitous conduct having a tendency to produce serious emotional and psychological impact on such minors who, because of their tender age, are deemed incapable of protecting themselves. The statutory purpose would be frustrated to a very substantial degree if the only prohibited . . . contact had to be of the flesh-to-flesh variety.

388 A.2d 60, 63 (Me. 1978).

In *Miles v. State*, a Texas court concluded when the defendant grabbed the victim's penis through his pants, he violated a statute criminalizing placing one's hands "upon or against a sexual part of a male or female under the age of fourteen." 247 S.W.2d 898, 899 (Tex. Crim. App. 1952) (quoting Tex. Penal Code § 535d (1952)). The court rejected the defendant's contention that the statute required skin-to-skin contact, and in reaching its decision, the court reasoned:

> [T]here is nothing in the statute suggesting that the crime there denounced could be committed only by the application of the bare hand of the accused to the bare or naked sexual part of the child. This court, under the guise of statutory construction, cannot write into the statute that which obviously is not contained therein.

*Id.*

Several years later, another Texas court, relying on *Miles*, expounded upon the meaning of touching, and found it

> quite plain that the essence of the act of touching is to perceive by the sense of feeling. It is a matter of the commonest knowledge that the interposition of a layer of fabric between a person's hand and an object upon which the hand is placed will not prevent that person from feeling the object thus concealed.

*Resnick v. State*, 574 S.W.2d 558, 560 (Tex. Crim. App. 1978). The court also rejected a flesh-to-flesh contact requirement because

> absurd results would follow. Under such an analysis, a defendant who thrust his hand beneath a victim's undergarments and fondled his or her genitals in a public place could not be prosecuted . . . if he were wearing a glove.

*Id.*

At least one court has adopted a different interpretation analogous to the one Alvarado suggests here. In *State v. Jacobs*, the Utah Court of Appeals conceded "the words 'touch' and 'touching' might commonly be understood to include contact that was made over clothing." 144 P.3d 226, 228 (Utah Ct. App. 2006). However, several other Utah statutes criminalized touching "even if accomplished through clothing," and the court concluded the omission from the statute under which Jacobs was charged was purposeful. *See id.* at 228–29 (quoting Utah Code Ann. § 76-5-407 (2003)). The court suggested the statute's focus on skin did not necessarily require skin-to-skin contact, just that the *victim's* skin was bare, even if the defendant wore a glove. *See id.* at 229.

**D. Application of Legal Principles.** After considering the statutes, *Pearson*, and the authority from other states addressing similar questions, we conclude a person can touch another's pubes or genitals within the meaning of Iowa Code section 709.8 (2013) without making skin-to-skin contact. As under section 702.17, there is no express requirement of skin-to-skin touching in section 709.8. *See Pearson*, 514 N.W.2d at 455 ("There is no language in [section 702.17] which would

limit its scope in this way."). Indeed, the interpretation of section 709.8 advanced by Alvarado requiring skin-to-skin contact would, in effect, add words to the statute, contrary to our rules of statutory interpretation. *See State v. Hesford*, 242 N.W.2d 256, 258 (Iowa 1976) ("No court, under the guise of judicial construction, may add words of qualification to the statute . . . ."); *see also State v. Graves*, 491 N.W.2d 780, 781–82 (Iowa 1992) (declining to "add modifying words to a statute"). Our interpretation does not create overlap between section 709.8 and section 709.12 because the two statutes address different (though proximate) body parts. *See Shearon*, 660 N.W.2d at 56. Additionally, requiring proof of skin-to-skin contact for a conviction under section 709.8 would plainly insulate from liability a gloved suspect who touches a naked victim. We decline to interpret the statute to produce such an absurd result. *See Paye*, 865 N.W.2d at 7 (applying the absurd results doctrine in interpreting a criminal statute).

## V. Conclusion.

Because we conclude a person can "touch the pubes or genitals of a child," Iowa Code § 709.8(1), without making skin-to-skin contact, the evidence was sufficient to support Alvarado's convictions. We therefore affirm both lower courts' decisions.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**