# IN THE COURT OF APPEALS OF IOWA

No. 15-0628
Filed May 11, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WOODROW HALL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Christopher C. Foy, Judge.

A defendant challenges his convictions for willful injury, assault while participating in a felony, and going armed with intent. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

A jury convicted Woodrow Hall of three felonies arising from a brawl during which Hall repeatedly stabbed a fellow bar patron, just missing his carotid artery. Hall challenges the guilty verdicts, contending the State's evidence was insufficient to show he acted with specific intent or that his actions were not justified by a fear for his life. Recognizing the jurors were entrusted to weigh the veracity of the witnesses and viewing the evidence in the light most favorable to the guilty verdicts, we affirm.

## I. Facts and Prior Proceedings

An early March snowstorm idled the four-member crew from Tri-State Tower, who had traveled to Waverly to perform cell tower maintenance. Instead of working, for most of the afternoon and evening of March 4, 2014, Brandon Probus, Jared Kalkbrenner, Codie Dugan, and Ty Spitzner stayed in their rooms at the Red Fox Inn or drank and played pool at the Happy Hour Pub. The pub's owner, Julie Westendorf, rented space from the hotel for her business.

As the evening progressed, Dugan became heavily intoxicated, and Kalkbrenner enlisted the help of Spitzner and Probus to ride herd on Dugan in the bar. The bartender became angry when Dugan failed to leave a tip on his eighty-dollar bar tab and reported the men's boorish behavior to Westendorf, who was socializing in the pub that night with her boyfriend Woodrow Hall. Westendorf told Kalkbrenner and Dugan to leave the pub. After midnight, Kalkbrenner escorted Dugan back to his hotel room, before heading back to the pub to collect Spitzner and Probus.

Meanwhile, Westendorf—who admittedly had been drinking herself that night—yelled at Spitzner and Probus to leave the pub and "never come back." She continued to berate the two men as they walked down the hallway toward the hotel lobby. In the lobby, the hotel manager tried to defuse the situation by suggesting Probus and Spitzner could buy alcohol elsewhere and drink in their rooms. By this time, Kalkbrenner had rejoined Probus and Spitzner in the lobby.

Westendorf returned to the pub and complained to Hall that the men had shoved her, spurring her boyfriend to action by saying: "How can you let them treat me like that?" To defend his girlfriend's honor, Hall left the pub, walked nearly one-hundred yards, and caught up with Probus and Spitzner near the swimming pool off the hotel lobby. Hall—who was carrying a knife in his pocket—yelled, "Hey," to get their attention. Spitzner turned around and recalled Hall saying: "Do we have a problem?" Spitzner raised his hands in the air and replied: "No problem." Spitzner then recalled being struck by a fist.

The person throwing the first punch was a point of contention at trial. Probus testified when he tried to get in between Hall and Spitzner, "a punch was thrown." Probus recalled ducking and then landing a punch against Hall. Kalkbrenner saw Hall approaching at a fairly quick pace and then "[t]he fight broke out." Kalkbrenner saw Probus hit Hall and then the fight went "to the ground" as Probus continued to pummel Hall. Hall testified Probus landed the first punch, hitting him in the temple.

All the witnesses recalled Hall and Probus fighting on the ground. Kalkbrenner saw Probus on top of Hall, punching Hall more than once. Hall testified Probus hit Hall's head against the floor and Hall was afraid, after two or

three more punches, Probus was "really going to hurt [him]." Hall—who was six-feet three-inches tall and weighed two hundred and twenty-five pounds—told the jury he reached into his pocket and pulled his knife because he "was afraid for [his] life."

Probus recounted "wrestling around" with Hall, unaware he had a knife: "I thought it was a punch being thrown. And when I went backwards is when I landed on my neck." After inflicting the neck wound, Hall "drug the knife back and came back to stab [Probus] in the gut." Probus remembered pleading: "Hey, dude, stop." Westendorf also screamed, "Woody, stop," as she came into the pool area and pulled her boyfriend "off of the gentleman that was on the ground." Spitzner saw "lots of blood" in the hallway but did not know what happened— "Didn't know there was any knives or anything involved. I thought it was just a fistfight."

The hotel manager called the police and asked for an ambulance. Probus underwent surgery for wounds to his right neck and left shoulder. His neck injury was six-inches long and one-and-one-half inches deep and came very close to piercing the carotid artery. The injury to his shoulder required physical therapy and limited his ability to lift and perform physical labor.

The county attorney filed a three-count trial information charging Hall with (1) willful injury causing serious injury, a class "C" felony in violation of Iowa Code section 708.4(1) (2013); (2) assault while participating in a felony causing serious injury, a class "C" felony in violation of section 708.3; and (3) going armed with intent, a class "D" felony in violation of section 708.8. Hall filed a notice of self-

defense. A jury convicted Hall on all three counts after a trial in January 2015. Hall now appeals.

## II. Standard of Review

Hall asserts the State's proof was insufficient to convict him. We review such sufficiency challenges for correction of legal error. *See State v. Alvarado*, 875 N.W.2d 713, 715 (Iowa 2016). We analyze the evidence in "the light most favorable to the State to determine if, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt." *Id.*

## III. Analysis of Sufficiency Claims

The jury convicted Hall of three felonies, all of which are defined in Iowa Code chapter 708, governing assault crimes. We first set out the elements of those crimes. The court provided the following marshalling instruction on willful injury causing serious injury:

> 1. On or about March 5, 2014, Defendant made physical contact with Brandon Probus.
> 2. Defendant specifically intended to cause a serious injury to Brandon Probus.
> 3. As a result, Brandon Probus sustained a serious injury.
> 4. Defendant acted without justification.

The court also instructed the jury on the offense of going armed with intent:

> 1. On or about March 5, 2014, Defendant was armed with a knife.
> 2. The knife was a dangerous weapon . . . .
> 3. Defendant was armed with the specific intent to use the knife against another person without justification.
> 4. While armed with the knife, Defendant moved from one place to another.

The court finally instructed the jury on assault while participating in a crime causing serious injury:

> 1. On or about March 5, 2014, Defendant assaulted Brandon Probus.
> 2. At the time of the assault, Defendant was participating in the crime of going armed with intent. . . .
> 3. Defendant acted without justification.
> 4. The assault of Defendant caused serious injury to Brandon Probus.

## A. Specific Intent

On appeal, Hall limits his challenge to the specific-intent elements of willful injury and assault while participating in a felony.[1]  Specific intent refers to the aim of the accused to "do some *further* act or achieve some *additional consequence.*" *In re D.S.*, 856 N.W.2d 348, 352 (Iowa 2014).  Specific-intent crimes require proof of a purpose "above and beyond any mental state required with respect to the actus reus of the crime." *Id.*

Hall asserts the State did not present evidence he intended to cause pain or injury to Probus in any manner, much less to cause serious injury.  Specific intent is "seldom capable of direct proof, but may be shown by reasonable inferences drawn from facts established." *State v. Chatterson*, 259 N.W.2d 766, 769-70 (Iowa 1977).  Also at play is "the presumption that a person intends the natural consequences of his intentional acts." *Id.*

The jury could reasonably infer Hall's specific intent from his actions.  Hall followed Probus and his companions from the pub to the hotel pool area after his girlfriend complained they had mistreated her.  The jury heard testimony Hall

---

[1] Because Hall does not challenge the intent element of going armed, we will not address the sufficiency of the State's evidence of intent for that offense.

approached the group in an aggressive manner, indicating he was ready to fight. Hall continued to move toward them, even after Spitzner threw up his hands and said there was "no problem." During the fight, Hall pulled out his knife and slashed Probus's neck, a vulnerable area of the body. *See State v. Jones*, 817 N.W.2d 11, 13 (Iowa 2012) (letting stand *State v. Jones*, No. 09–0146, 2011 WL 5444091, at *4 (Iowa Ct. App. Nov. 9, 2011) (holding fork used to stab victim was capable of causing death, "especially when causing an injury in a vulnerable place like the neck"). And Hall did not end his assault there. As Probus and Westendorf implored him to stop, he stabbed Probus again in the chest and shoulder. The State presented substantial evidence from which a rational finder of fact could conclude, beyond a reasonable doubt, that Hall had the requisite specific intent to cause serious injury to Probus. *See generally State v. Delay*, 320 N.W.2d 831, 835 (Iowa 1982) (finding defendant "deliberately" proceeded "with the intent to seriously injure" the officers). The district court did not err in denying the motion for judgment of acquittal.

## B. Justification

Hall also alleges he was justified in stabbing Probus to protect himself from deadly force during the fist fight; he contends he acted with justification on all three counts. The justification defense is rooted in Iowa Code section 704.3, which states: "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force."

To disprove Hall's justification defense, the State was required to prove one of the following elements: (1) Hall started or continued the incident which

resulted in injury, (2) an alternative course of action was available to Hall, (3) Hall did not believe he was in imminent danger of death or injury and the use of force was not necessary to save himself, (4) Hall did not have reasonable grounds for the belief, or (5) the force used by Hall was unreasonable. *See State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006).

On appeal, the State argues the trial record shows Hall started or continued the violent encounter: "Even though Probus and his group had left the bar and were heading back to their rooms, the defendant walked about 280 feet—almost the length of a football field—to catch up with them." We find this argument persuasive. Although Hall contends he just wanted to talk to them, the jurors were entitled to credit the testimony of Probus, Spitzner, and Kalkbrenner that they could tell by Hall's manner of approach that he intended to fight. *See State v. Wedelstedt*, 265 N.W.2d 626, 627 (Iowa 1978) ("It is elementary the jury is at liberty to take and reject from the testimony of various witnesses as it chooses.").

The record also supports the State's position that an alternative course of action was available to Hall. He could have stayed in the bar, or approached the men in a nonconfrontational manner to avoid the physical clash. In addition, the evidence belies the sincerity of Hall's belief he was in imminent danger of death or injury and needed to use his knife to save himself. For instance, in an exchange of text messages with Westendorf after the incident, Hall never mentioned fearing for his life. In response to Westendorf's concern about the injuries to Probus, Hall wrote: "If he dies then he should not have fucked with me or mine."

Finally, the jury was entitled to conclude from the evidence that Hall escalated the level of force beyond what was reasonable under the circumstances. Reasonable force is defined as "that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss." Iowa Code § 704.1. Unbeknownst to Probus and his companions, Hall brought a knife to a fist fight. *See State v. Hall*, No. 11-1524, 2012 WL 4900426, at *8 (Iowa Ct. App. Oct. 17, 2012) (finding such use of force unreasonable). And Hall continued to stab Probus even when others pleaded for him to stop.

Because the State presented substantial evidence showing Hall was not justified in his actions, the district court correctly overruled the motion for judgment of acquittal.

**AFFIRMED.**